[No. A110536. First Dist., Div. One. Aug. 30, 2006.]

JIM PETROPOULOS, Plaintiff and Appellant, v.
DEPARTMENT OF REAL ESTATE, Defendant and Respondent.

**COUNSEL**

Gary Garfinkle and Maria Garfinkle for Plaintiff and Appellant.

Bill Lockyer, Attorney General, Randall P. Borcherding and Kristian D. Whitten, Deputy Attorneys General, for Defendant and Respondent.

**OPINION**

**MARGULIES, J.**—Rejecting the recommendation of an administrative law judge assigned to hear the case, the Department of Real Estate (DRE) revoked appellant Jim Petropoulos's broker's license based on his guilty plea to a charge of misdemeanor battery. During the administrative proceedings, DRE conceded that Petropoulos's offense was not a crime involving moral turpitude. On this appeal from the denial of his ensuing petition for a writ of mandate, Petropoulos contends that: (1) there is no statutory authorization for DRE to revoke his license for the commission of a misdemeanor not involving moral turpitude, and (2) the evidence failed to establish a substantial relationship between the offense and his duties as a licensee. We find merit in the former contention, and reverse the judgment denying Petropoulos relief from the revocation of his license.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Petropoulos became a licensed real estate salesman in 1990 and obtained his real estate broker's license in 1994. Until the administrative proceeding that gave rise to this case, Petropoulos had not been the subject of any disciplinary action by the DRE under either license.

Within a three-month period, Petropoulos was involved in two domestic violence incidents with different women. The first occurred in Contra Costa County on October 21, 1999, and involved Petropoulos's former spouse. The second occurred in San Mateo County on January 9, 2000, and involved Petropoulos's then girlfriend. On February 2, 2000, Petropoulos pleaded guilty to misdemeanor battery against his girlfriend, and on May 31, 2000, he was placed on probation conditioned on serving 20 days in jail and completing a domestic violence counseling program. On February 28, 2000, he pleaded nolo contendere to misdemeanor battery against his former wife, and was sentenced to three years' probation and required to attend a domestic violence program. Both of Petropoulos's convictions were expunged in 2003, pursuant to Penal Code section 1203.4, after he fulfilled the conditions of his probation.

### A. Administrative Pleadings

DRE proceedings to deny, suspend or revoke a real estate license are initiated by the filing of an "accusation." (Gov. Code, § 11503; Bus. & Prof. Code,[1] § 10100.) On April 11, 2003, DRE filed an accusation against Petropoulos

---

[1] All further statutory references are to the Business and Professions Code unless otherwise specified.

alleging that: (1) on or about May 31, 2000, Petropoulos was convicted of battery under Penal Code section 242; and (2) battery is a "crime involving moral turpitude and/or which is substantially related . . . to the qualifications, functions or duties of a real estate licensee."[2] As a matter in aggravation of Petropoulos's battery conviction, the accusation further alleged that on or about February 28, 2000, Petropoulos had been convicted of another violation of Penal Code section 242, which was also, allegedly, "a crime involving moral turpitude and/or which is substantially related . . . to the qualifications, functions or duties of a real estate licensee."[3] Finally, the accusation alleged that Petropoulos's convictions "constitute cause under Sections 490 and 10177[, subdivision] (b) of the [Business and Professions] Code for suspension or revocation of [Petropoulos's real estate broker's license]."

Section 490 applies, with specified exceptions, to all professional licensing boards or commissions governed by the Business and Professions Code. (§§ 475, 476.) Section 490 states in relevant part: "A board may suspend or revoke a license on the ground that the licensee has been convicted of a crime, if the crime is substantially related to the qualifications, functions, or duties of the business or profession for which the license was issued." Section 10177, subdivision (b), which applies to real estate licensees only, states in relevant part: "The commissioner may suspend or revoke the license of a real estate licensee . . . who has . . . . [¶] . . . [¶] . . . [e]ntered a plea of guilty or nolo contendere to, or been found guilty of, or been convicted of, a felony or a crime involving moral turpitude . . . ."

B. *Administrative Hearing*

On May 10, 2004, a hearing on DRE's accusations was held before an administrative law judge (ALJ). Petropoulos argued that the offense alleged as a cause for disciplinary action was a misdemeanor that did not involve moral turpitude as required by section 10177, subdivision (b), and that the offense was not substantially related to the qualifications, functions, or duties of a real estate licensee under section 490.

---

[2] Battery is defined in Penal Code section 242 as "any willful and unlawful use of force or violence upon the person of another," and is punishable as a misdemeanor by a fine not exceeding $2,000, or by imprisonment in a county jail not exceeding six months, or both. (Pen. Code, § 243, subd. (a).)

[3] The DRE has explained that the February 28 conviction was alleged only in aggravation because it was beyond the three-year limitation period for filing an accusation, and thus could not be an independent cause for discipline. (See § 10101 [accusation shall be filed not later than three years from the occurrence of the alleged grounds for disciplinary action].)

DRE's case-in-chief consisted of police reports and court records pertaining to the January 2000 incident, and court documents evidencing the charges and no contest plea arising from the October 1999 incident. The police report concerning the January 2000 incident included the following information: Petropoulos and Patricia Cardenas had been dating for over a year. Petropoulos slept frequently at Cardenas's house. Petropoulos had two young children from his previous marriage who he would sometimes bring over to Cardenas's house to spend the night. On January 8, 2000, Petropoulos and Cardenas had gone out to dinner and consumed three or four alcoholic beverages. On the drive home, they began to argue about Petropoulos's children staying overnight at Cardenas's home. The argument continued after they arrived home and had gotten into Cardenas's bed together. According to Cardenas, she wanted to go to sleep and Petropoulos insisted on watching television. She pulled the remote from his hands and a physical altercation began between them in which, according to Cardenas's version, Petropoulos pulled her out of the bed and struck her several times in her face and head with his closed fist. She was left with a bruised lower right eye, black and blue in color, and a bump on the back of her head. After the altercation was over, Petropoulos apologized and pleaded with Cardenas not to call the police, to no avail. When contacted by police at the scene, Petropoulos had a torn shirt, scratches on his forehead, and a scrape on his right shin. He denied striking Cardenas with his hands. According to Petropoulos, he had told Cardenas that he would take his children and leave if she had a problem with them staying in her house. When he tried to leave the bedroom, Cardenas blocked his way, grabbed him, and tore his shirt. He had put up his hands to move her out of the way. When asked about the victim's facial bruising and head bump, Petropoulos told police that she had done it to herself by deliberately hitting her head on the carpet after telling him, "I know how it works . . . I'll make sure that you pay."

Petropoulos testified at the hearing before the ALJ. He denied striking Cardenas with his fists. Petropoulos testified on direct examination that Cardenas had sustained her head injuries by striking her head against the bedposts while he was restraining her from continuing to hit him.

DRE argued before the ALJ that although battery is not a crime of moral turpitude per se, the facts and circumstances of the January 9, 2000 incident did involve moral turpitude in that Petropoulos attempted to inflict serious injury on a person with whom he had a close personal relationship. On the issue of whether there was a substantial relationship between the offense and the duties of a real estate licensee, DRE cited subdivision (a)(8) of its regulation 2910 which establishes criteria to be used by the DRE in making such determinations. (See Cal. Code Regs., tit. 10, § 2910 (hereafter Regulation 2910).) That regulation provides in pertinent part as follows: "When considering whether a license should be denied, suspended or revoked

on the basis of the conviction of a crime . . . the crime . . . shall be deemed to be substantially related to the qualifications, functions or duties of a licensee of the Department within the meaning of Section[] . . . 490 of the Code if it involves: [¶] . . . [¶] . . . Doing of any unlawful act with the . . . intent or threat of doing substantial injury to the person or property of another." (Reg. 2910, subd. (a)(8).)

In his proposed decision, the ALJ held that DRE failed to show by clear and convincing evidence that Petropoulos's battery on Cardenas involved moral turpitude. The ALJ found that "the evidence shows that [Petropoulos] and Cardenas got into an argument that escalated into some physical acts." While noting the discrepancy between Petropoulos's hearing testimony and his statement to police concerning how Cardenas sustained her injuries, the ALJ found the evidence insufficient to establish that Petropoulos "acted with the sort of 'readiness to do evil' or 'baseness, vileness or depravity' that generally characterize crimes of moral turpitude." The ALJ concluded that no cause for disciplinary action existed against Petropoulos under section 10177, subdivision (b). Regarding the substantial relationship issue, the ALJ concluded that the evidence failed to show that Petropoulos had an intent to cause substantial injury to Cardenas. He also noted that an intent to injure is not a necessary element of the crime of battery. The ALJ therefore held that the accusation against Petropoulos should be dismissed.

## C.  *Decision of Real Estate Commissioner*

The Real Estate Commissioner (the Commissioner) timely rejected the ALJ's proposed decision and requested additional written argument from the parties on the merits of the DRE's accusation.[4] In its written submission to the Commissioner, DRE conceded that "under the facts of the convictions in this case there is no moral turpitude." The DRE's submission did not reference or rely on any provision of section 10177. It relied exclusively on section 490, contending that disciplinary action was warranted because Petropoulos committed a crime substantially related to the qualifications, functions, or duties of a real estate licensee for purposes of that section.

In his written decision revoking Petropoulos's broker's license, the Commissioner found cause for disciplinary action under section 490 only. The Commissioner made no finding that Petropoulos's battery conviction was

---

[4] Following an adjudicatory proceeding held before an ALJ, the concerned agency is authorized, among other options, to reject the ALJ's proposed decision within a specified time period, and decide the matter itself based on the written record of the proceedings before the ALJ, including a transcript of the hearing. (Gov. Code, § 11517, subd. (c)(2)(E).)

a crime of moral turpitude or that Petropoulos had violated section 10177, subdivision (b). He held that the evidence in the police report that Petropoulos punched Cardenas hard enough to bruise her face and raise a bump on the back of her head—in combination with Petropoulos's size[5]—established by clear and convincing evidence that there was a threat of substantial physical injury to the victim under Regulation 2910, subdivision (a)(8). The Commissioner found that this analysis was reinforced by Petropoulos's February 2000 battery conviction, and by the conflict between Petropoulos's hearing testimony about how Cardenas received her injuries and the account he had given to police at the scene. Based on the cited evidence and Regulation 2910, the Commissioner concluded that Petropoulos had violated section 490 by committing a crime that was substantially related to the qualifications, functions, or duties of a real estate licensee.

The Commissioner ordered Petropoulos's broker's license to be revoked. The order allows Petropoulos to apply for a restricted license under which the Commissioner could (1) suspend his license prior to hearing in the event of certain specified violations, and (2) place other conditions upon the license. (See §§ 10156.6, 10156.7.) The order barred Petropoulos from reapplying for an unrestricted license or seeking removal of any conditions placed on his license for two years following the effective date of the Commissioner's decision.[6]

D.  *Trial Court Proceedings*

Petropoulos timely petitioned for a writ of mandate ordering DRE to set aside its decision revoking his license and to reinstate the ALJ's proposed decision. The trial court denied the petition, stating in relevant part: "The Court . . . finds that the DRE's ruling is supported by the weight of the evidence, and that the DRE met the requisite burden of proving its case by clear and convincing evidence."

This appeal followed.

## II.  DISCUSSION

Petropoulos's principal argument on appeal is that his misdemeanor conviction for a crime that DRE concedes does not involve moral turpitude cannot support disciplinary action under the applicable statutes. According to Petropoulos, DRE cannot rest a decision to revoke or suspend his real estate license solely on a purported violation of section 490 because section 490

---

[5] According to the police report, Petropoulos was 6 feet 1 inch tall and weighed 230 pounds.

[6] The disciplinary order was stayed pending the outcome of judicial review.

operates as a *restriction* on the DRE's power to take disciplinary actions when a licensee has been convicted of a crime, not as an independent statutory *authorization* for such actions.

■ As an initial matter, DRE maintains that Petropoulos waived his present statutory argument by failing to raise it in the trial court.[7] Generally, points not raised in the trial court are deemed waived on appeal. (See *Redevelopment Agency v. City of Berkeley* (1978) 80 Cal.App.3d 158, 167 [143 Cal.Rptr. 633].) But the waiver rule carries an important exception "where the theory presented for the first time on appeal involves only a legal question determinable from facts which not only are uncontroverted in the record, but which could not be altered by the presentation of additional evidence." (*Ibid.*) In such cases, "whether the general rule shall be applied is largely a question of the appellate court's discretion." (*Ibid.*)

The sufficiency of section 490 as a basis for disciplinary action presents a pure question of statutory interpretation that can be resolved without consideration of any facts that were disputed in the administrative proceedings. Further, the claim raises an issue of first impression that may arise in future cases, and should be settled at the appellate level for the benefit of DRE and its licensees.[8] Accordingly, we exercise our discretion to reach Petropoulos's statutory argument on its merits.

Section 490 states that "[a] board may suspend or revoke a license on the ground that the licensee has been convicted of a crime, if the crime is substantially related to the qualifications, functions, or duties of the business or profession for which the license was issued." The question presented by this appeal is whether section 490, standing alone, authorizes DRE to suspend or revoke a real estate salesman's or broker's license or whether it operates solely to limit DRE's power to suspend or revoke under section 10177, subdivision (b). In other words, does section 490 state a sufficient or merely a necessary condition for DRE to take disciplinary action against a licensee convicted of a crime? In our view, that determination requires consideration of section 490's statutory context and legislative history.[9]

---

[7] DRE makes no claim that Petropoulos failed to exhaust his administrative remedies by neglecting to raise his current statutory claim during the administrative proceedings. We note in that regard that DRE did not drop its claim that section 10177, subdivision (b) provided grounds for discipline until after Petropoulos filed his only allowed brief to the Commissioner.

[8] As further discussed *post*, the issue presented here will not arise in most other licensed professions. After 1974, the Legislature amended all but a few of the licensing acts contained in the Business and Professions Code to eliminate the moral turpitude requirement, and to mirror section 490.

[9] We may take judicial notice of legislative history materials on our own motion. (See *PG&E Corp. v. Public Utilities Com.* (2004) 118 Cal.App.4th 1174, 1204, fn. 25 [13 Cal.Rptr.3d 630].)

A.  *1972 Legislation*

Section 490 is part of division 1.5 of the Business and Professions Code, entitled "Denial, Suspension and Revocation of Licenses" (hereafter Division 1.5), which was added to the code by Statutes 1972, chapter 903, section 1, pages 1605–1607. With a couple of exceptions not relevant here, Division 1.5 applied to all of the licensing boards and commissions that operated under the Business and Professions Code. (Stats. 1972, ch. 903, § 1, pp. 1605–1606.) At the time of the new division's enactment, each such licensing board or commission already had its own statute specifying grounds for suspending or revoking a licensee's license. Most of these statutes—including section 10177 for the real estate profession—contained provisions authorizing the revocation of licenses for conviction of a crime involving moral turpitude. (See *Morrison v. State Board of Education* (1969) 1 Cal.3d 214, 227–228, fn. 21 [82 Cal.Rptr. 175, 461 P.2d 375] for a partial list of such statutes; see also Assem. Bill No. 1647 (1977–1978 Reg. Sess.) as amended Aug. 1, 1977, amending the revocation provisions of numerous licensing statutes to eliminate the moral turpitude requirement.)

The first section of Division 1.5 contained generic language that could be read to supersede these provisions. It stated in relevant part: "Notwithstanding any other provisions of this code, the provisions of this division shall govern the denial of licenses . . . on the grounds of a lack of good moral character . . . and shall govern the suspension or revocation of . . . licenses . . . on the grounds of conviction of a crime." (Stats. 1972, ch. 903, § 1, p. 1605.) However, section 490 in its original form did not purport to replace or supersede any provision in the code authorizing disciplinary action against a licensee who had been convicted of a crime. Instead, it merely required all of the boards having such authorizing provisions to take the relationship of the crime to the licensed activity into account before applying them: "Each board, when considering the suspension or revocation of a license under this code on the ground that the licensee has been convicted of a crime, shall take into account the relationship of the crime to the licensed activity." (Stats. 1972, ch. 903, § 1, pp. 1605, 1607.)

According to a committee analysis of the legislation creating Division 1.5, the measure was introduced as a result of a staff study and report, which concluded, among other things, that licensing statutes were being applied in an unreasonable and discriminatory manner to punish individuals for past crimes, without regard to the relevance of the crime to the licensed activity. (Assem. Com. on Commerce and Public Utilities, Analysis of Sen. Bill No. 1349 (1971–1972 Reg. Sess.) as amended June 1, 1972; Sen. Com. on Business and Professions, staff study, Good Moral Character Requirements for Licensure in Business and Professions (Feb. 8, 1972) pp. 9–12 (hereafter

Good Character Requirements).) The staff report and the legislation also addressed a closely related issue: the requirement found in many licensing statutes at the time that a prospective licensee show "good moral character" before being issued a license. (Good Character Requirements, pp. 2–8.) According to the report, licenses were frequently denied on this basis solely because the prospective licensee had a criminal arrest or conviction record, without regard to the nature of the acts alleged or proven. (Good Character Requirements, pp. 3–6.) Sections 480 and 481 of Division 1.5, as added by Statutes 1972, chapter 903, page 1606, therefore specified that a license applicant was deemed to possess "good moral character" unless he had committed an act that, if done by a licensee, would be grounds for suspension or revocation, provided that the act had a substantial relationship to the functions of the licensed profession.

B. *1974 Amendments*

Senate Bill No. 1767, enacted into law in 1974, made a series of amendments to Division 1.5. (See Sen. Bill No. 1767, as chaptered, Sen. Final Hist. (1973–1974 Reg. Sess.) p. 780; Stats. 1974, ch. 1321, §§ 1–14, pp. 2874–2876.) In particular, Senate Bill No. 1767 changed the first sentence of section 490 into its current form, and removed the concept of "good moral character" from sections 480 and 481. (Stats. 1974, ch. 1321, §§ 1, 3, 4, 5, 6, pp. 2874–2875.) In addition, the 1974 amendments added the following language to section 475: "A license shall not be denied, suspended, or revoked on the grounds of a lack of good moral character or any similar ground relating to an applicant's character, reputation, personality, or habits." (Stats. 1974, ch. 1321, § 1, p. 2874.)

A legislative committee staff analysis of the bill described it in relevant part as follows: "A standard part of most occupational licensing laws is a provision which permits a licensing board to deny a license or to suspend or revoke a license after it has been issued if the applicant or licensee lacks 'good moral character' or . . . has been convicted of a crime involving 'moral turpitude.' The problem with this kind of provision is that each licensing board has a different notion of what good moral character is and what moral turpitude is[, which creates equal protection issues and] commit[s] too much discretion to the licensing boards. . . . [¶] A major step toward correcting this problem was made in 1972 [by the enactment of Senate Bill No. 1349] which created a standard definition for 'good moral character' and 'moral turpitude' . . . . [¶] . . . [¶] Basically, this bill builds upon [Senate Bill No. 1349]. It reorganizes and rewrites several sections of that legislation without making any substantive changes in them. In several other respects, however, it would make substantive changes. [¶] First, it effectively eliminates the concept of good moral character from the [Business and Professions] Code. . . . Instead,

the bill would provide that only certain specific acts may be grounds for license denial, suspension or revocation. Sec[tion] 480 would provide that a license may be denied only for the conviction of a crime; an act involving dishonesty, fraud, or deceit . . . ; or an act which would be grounds for discipline if done by a licensee. Sec[tion] 490 would provide that a license may be suspended or revoked only for conviction of a crime. These specific acts would replace good moral character. Any grounds for discipline other than good moral character in the various licensing laws would, of course, remain in effect. [¶] Second, the bill would require that the denial, suspension or revocation of a license because of any of these specific acts must be based upon a finding by the board that the act 'is substantially related to the qualifications, functions, or duties of the business or profession' in question." (Assem. Com. on Commerce and Public Utilities, Analysis of Sen. Bill No. 1767 (1973–1974 Reg. Sess.) as amended Aug. 8, 1974, pp. 1–2.)[10]

We have found no indication in the legislative history of Division 1.5 that section 490 was intended to independently authorize licensing boards to revoke or suspend licenses on the ground that a licensee had been convicted of a crime. To the contrary, the starting premise for both the 1972 and 1974 amendments was that the boards enjoyed *too much* discretion under their licensing statutes, and were exercising it in an arbitrary and standardless fashion to further penalize licensees for crimes that had no bearing on the their fitness to practice their profession. In our view, the intent of the 1974 amendment to section 490 was to eliminate the discretion of the various licensing boards to discipline their licensees for crimes or offenses that bore no substantial relationship to the functions and duties performed by their licensees. It was not intended to provide an additional ground for disciplining licensees over and above those enumerated in the licensing laws specific to each profession, nor was it intended to replace or supplant the grounds for imposing discipline for criminal convictions that were (and still are) set forth in the separate licensing statutes of each business and profession covered by Division 1.5.

A number of post-1974 cases applying section 490 in the real estate context have implicitly or explicitly taken the same view of its intent that we adopt here—that it *limits*, not *augments*, the powers DRE otherwise would have under section 10177 to take disciplinary action against a licensee

---

[10] Contrary to the 1974 analysis of Senate Bill No. 1767 (1973–1974 Reg. Sess.), the 1972 predecessor legislation did not, in fact, purport to adopt a standard definition of "moral turpitude." Also, the sentence in the analysis stating that section 490 (as proposed to be amended by Senate Bill No. 1767) "would provide that a license may be suspended or revoked only for the conviction of a crime" must be read in context with the next two sentences. By its terms, Senate Bill No. 1767 only placed limitations on grounds for license suspension or revocation that involved moral character or conviction for a crime. It did not limit other grounds that are found in Business and Professions Code licensing statutes.

convicted of a crime. (See *Arneson v. Fox* (1980) 28 Cal.3d 440, 445–446, 449 [170 Cal.Rptr. 778, 621 P.2d 817] [§ 490 imposes a "further requirement" on the application of § 10177, subd. (b) and *tempers* the Commissioner's discretion under that subdivision]; *Pieri v. Fox* (1979) 96 Cal.App.3d 802, 805–807 [158 Cal.Rptr. 256] [proof of a crime involving moral turpitude insufficient to support denial of real estate license; § 480 adds an *additional* factual requirement that past offense must be substantially related to qualifications for a real estate license]; *Golde v. Fox* (1979) 98 Cal.App.3d 167, 179–180 [159 Cal.Rptr. 864] [revocation of real estate license depended on proof of three facts: (1) guilty plea to (2) a felony or crime involving moral turpitude that was (3) substantially related to licensee's fitness to practice as a real estate broker]; see also *Harrington v. Department of Real Estate* (1989) 214 Cal.App.3d 394 [263 Cal.Rptr. 528] [to support denial of a license, DRE must prove *both* that licensee was convicted of a misdemeanor involving moral turpitude *and* that crime bore a substantial relationship to his qualifications for license]; *Brandt v. Fox* (1979) 90 Cal.App.3d 737 [153 Cal.Rptr. 683] [same].)

■ In our view, DRE's reading of section 490 is at odds with other statutes affecting real estate licensees and with its own actions on related matters. Section 10156.5 of the real estate licensing law states in relevant part: "The commissioner may issue a restricted license to a person: [¶] . . . [w]ho is or has been licensed under this chapter and who has been found by the commissioner after a hearing *to have violated provisions of Division 4 of this code* where such violation would justify the suspension or revocation of the license." (Italics added.) Division 4 of the Business and Professions Code includes section 10177, but it does not include section 490, which is in Division 1.5. Judging from the language of section 10156.5, the Commissioner had no statutory authorization to offer Petropoulos a restricted license because he was not found to have violated any provision of division 4. DRE's interpretation of section 490 thus leads to an anomalous result. If a licensee has committed a serious felony in violation of section 10177, the Commissioner has discretion to impose the lesser discipline of issuing a restricted license, but if the licensee has committed the least serious offense justifying disciplinary action—a misdemeanor not involving moral turpitude—the Commissioner would have no such discretion. Conversely, the fact that section 10156.5 omits any reference to violations of Division 1.5 supports Petropoulos's view that Division 1.5 does not independently authorize disciplinary actions against licensees.

## C. *Related 1978 Legislation*

This view is further supported by the 1978 enactment of Assembly Bill No. 1647 (1977–1978 Reg. Sess.). (Stats. 1978, ch. 1161, p. 3585.) Assembly

Bill No. 1647 removed language referring to crimes involving moral turpitude from the licensing statutes of 28 licensing agencies subject to Division 1.5 and replaced it with language tracking section 490. (See Assem. Bill No. 1647 (1977–1978 Reg. Sess.) as introduced Apr. 14, 1977.) As a result of the bill, all but a few of the licensing agencies subject to Division 1.5 now have language in their statutes authorizing revocation or suspension of a licensee who is convicted of a "crime substantially related to the qualifications, functions, and duties" of the licensee, without reference to whether the crime is a misdemeanor or a felony, or does or does not involve moral turpitude. (See e.g., §§1670.1 (dentists), 2236 (physicians), 2555.1 (opticians), 4301 (pharmacists), 5100 (accountants), 7404 (barbering & cosmetology), 7668 (embalmers & funeral directors), 7860 (geologists & geophysicists), 8025 (shorthand reporters), 8649 (pest control operators), 9727 (cemetery licensees), & 9841 (electronic & appliance repair dealers).)

Two aspects of this legislative history are noteworthy. First, the Legislature evidently believed in 1978 that the existence of section 490 did not obviate the need for each licensing agency to have its own separate statutory authorization to take disciplinary action against a licensee convicted of a crime substantially related to his or her business or professional duties. If section 490 provided sufficient authorization for such actions, it would have been completely unnecessary to adopt legislation mirroring its language in dozens of other licensing statutes to which section 490 already applied. The enactment of Assembly Bill No. 1647 (1977–1978 Reg. Sess.) into law thus supports Petropoulos's position that disciplinary action against him must be predicated on one of the grounds for revocation set forth in DRE's own licensing statute. (See *Stafford v. Realty Bond Service Corp.* (1952) 39 Cal.2d 797, 805 [249 P.2d 241] [amendment of statute presumed not to be idle act; rather, every statute should be construed with reference to the whole system of law of which it is a part so that all may be harmonized and have effect].)

Second, DRE was one of a handful of licensing agencies that opted out of Assembly Bill No. 1647, and elected—notwithstanding section 490—to retain the moral turpitude concept in their statutes specifying grounds for disciplinary action.[11] The executive agency that had sponsored Assembly Bill

---

[11] We have found only three other disciplinary statutes in the licensing laws of agencies subject to Division 1.5 that still contain language referring to crimes involving "moral turpitude": (1) section 10562 (mineral, oil, and gas brokers, administered by the Commissioner); (2) section 1320 (laboratory technicians); and (3) section 7211.9 (instructors in guide dogs for the blind programs). Assembly Bill No. 1647 (1977–1978 Reg. Sess.) in fact removed language regarding moral turpitude from section 7211.9, but that amendment was superseded by other legislation chaptered in 1978 that amended another portion of section 7211.9. (See Stats. 1978, ch. 1161, §§ 371, 536, pp. 3702, 3756 & ch. 107, § 7, p. 272.) A few other statutes subject to Division 1.5 continue to refer to *acts* involving "moral turpitude" as a ground for license denial or revocation. (See, e.g., § 4301, subd. (f) (pharmacists).)

No. 1647, the Department of Consumer Affairs, explained how this came about in an enrolled bill report submitted to the Governor: "The bill was drafted by an attorney in the Department Legal Office. . . . [T]he amendments affecting a particular licensing agency were sent to that agency for review, comments, and approval. Where an agency indicated it did not desire an amendment proposed, the amendment was deleted." (Dept. of Consumer Affairs, Enrolled Bill Rep. on Assem. Bill No. 1647 (1977–1978 Reg. Sess.) Aug. 24, 1978.)[12]

Thus, DRE had an opportunity to eliminate the moral turpitude requirement from section 10177, subdivision (b) in 1978, but it chose not to do so. It presumably could have done so at any time since 1978 as there is no reason to believe the Legislature would have rejected legislation to put section 10177 into conformity with most of the other disciplinary statutes in the Business and Professions Code. At least since *Arneson v. Fox* was decided in 1980, DRE has been on notice that the moral turpitude requirement placed it under a dual burden of proof in misdemeanor conviction cases: It must prove *both* that the crime involved moral turpitude *and* that it bore a substantial relationship to the duties of a real estate licensee. DRE initially tried to meet that dual burden in the case before us. Having failed to do so, it now asks this court to adopt an interpretation of section 490 that would effectively turn the moral turpitude requirement in its disciplinary statute into a dead letter. This is a result that DRE could have and should have obtained by legislative amendment to section 10177, subdivision (b). We decline to arrive at it surreptitiously in the guise of construing section 490.

In sum, we hold that section 490 does not provide independent statutory authorization for DRE to suspend or revoke the license of a person based on his or her conviction of a crime. Only section 10177, subdivision (b) grants DRE that authority. The latter provision does not authorize DRE to take disciplinary action against a licensee convicted of a misdemeanor, unless the offense involves moral turpitude. Since Petropoulos's conviction concededly did not come within section 10177, subdivision (b), DRE's revocation of

---

[12] A legislative committee staff analysis of Assembly Bill No. 1647 suggested that the enactment of Division 1.5 had superseded references to "moral turpitude" in the licensing statutes and rendered them obsolete. (Assem. Com. on Labor, Employment & Consumer Affairs, Analysis of Assem. Bill No. 1647 (1977–1978 Reg. Sess.) p. 1.) However, in the absence of explicit repeal language in Assembly Bill No. 1647, we will not impute to the Legislature an implied intent to repeal the moral turpitude language in section 10177 and other disciplinary statutes. (*Lesher Communications, Inc. v. City of Walnut Creek* (1990) 52 Cal.3d 531, 540–541 [277 Cal.Rptr. 1, 802 P.2d 317] [repeals by implication disfavored].) The fact that the Legislature allowed DRE and other agencies to retain the language, at their election, in fact negates any such intent. We also do not construe the prohibition in section 475, subdivision (c) of revocations or suspensions based on "lack of good moral character or any similar ground" as an implied repeal of disciplinary provisions requiring a showing of moral turpitude in the commission of a single act or offense.

his broker's license was unauthorized by law. In light of this determination, it is unnecessary to reach Petropoulos's further contentions that his offense bore no substantial relationship to the functions and duties of a real estate licensee, and that he was denied due process.

## III.  DISPOSITION

The judgment is reversed and the matter is remanded to the trial court with directions to issue a peremptory writ of mandate.

Stein, J., concurred.

**MARCHIANO, P. J.,** Concurring.—I concur in the majority opinion and add the following perspective. Business and Professions Code section 10177, subdivision (b), enacted in 1943, allows the Real Estate Commissioner to suspend or revoke a license for the conviction of a felony or a crime involving moral turpitude.[1] The section was interpreted literally so that such convictions provided a basis for license suspension or revocation. (See *Watkins v. Real Estate Commissioner* (1960) 182 Cal.App.2d 397, 400 [6 Cal.Rptr. 191]; *Denny v. Watson* (1952) 114 Cal.App.2d 491, 494 [250 P.2d 692].) As discussed below, however, due process considerations eventually caused the courts to require that the felony and moral turpitude crime convictions have a relationship to the qualifications and duties of the profession. To incorporate this restriction for the suspension and revocation of all covered licensed professions, some of which did not have the limitation that the crime be so related, section 475, subdivision (b) of division 1.5 applied the limiting provision by stating that "[n]otwithstanding any other provisions of this code, the provisions of this division shall govern the suspension and revocation of licenses" on the grounds of a conviction of a crime.[2] Section 490 of division 1.5 requires that the crime be related to the qualifications and duties of the profession.

A review of the historical evolution of the present disciplinary provisions aids in understanding the result in this case. Section 10177, passed in 1943 to establish grounds for real estate licensee discipline, did not and does not contain the requirement that the crime be substantially related to the profession's duties and qualifications. Conviction of a felony first appeared in 1943 and "a crime involving moral turpitude" was added by a 1949 amendment. (§ 10177, as amended by Stats. 1949, ch. 826, § 6, p. 1572.) After many

---

[1] All statutory references are to the Business and Professions Code.

[2] Division 1.5 refers to division 1.5 of the Business and Professions Code, entitled "Denial, Suspension and Revocation of Licenses."

amendments during the last 60 years, the Legislature has not changed the wording of conviction of "a felony or a crime involving moral turpitude" as grounds that the Real Estate Commissioner may use to suspend or revoke a license under section 10177. Subdivision (b) describes unambiguously "a felony or a crime involving moral turpitude" as the predicate criminal offense for license suspension or revocation without the requirement that the crime be substantially related to the profession. The Legislature, however, passed comprehensive division 1.5 in 1972 to fill in the gap. Section 490 of division 1.5 imposes the additional requirement that the predicate crime be substantially related to the qualifications for all licensed professionals, including real estate brokers. Section 490 does not set forth a separate basis for suspension or revocation, but is an additional requirement that must be met to satisfy due process. (See *Windham v. Board of Medical Quality Assurance* (1980) 104 Cal.App.3d 461, 466 [163 Cal.Rptr. 566].)

The text of some of the sections of division 1.5 demonstrates that part of the purpose of division 1.5 was to adopt a uniform requirement of a substantial relationship of the crime to licensed professions for suspensions and revocations based on conviction of a crime. The Legislature expressed the need for this nexus in new division 1.5, section 481, subdivision (a) : "No act shall be grounds for denial, however, which does not have a substantial relationship to the functions and responsibilities of the licensed business or profession." (Stats. 1972, ch. 903, § 1, pp. 1605, 1606.) Section 490 then read: "Each board, when considering the suspension or revocation of a license under this code on the ground that the licensee has been convicted of a crime, shall take into account the relationship of the crime to the licensed activity."[3] (Stats. 1972, ch. 903, § 1, pp. 1605, 1607.) And the Legislature's 1972 Summary Digest further explained in part that the new division "[e]stablishes [a] standard for suspension or revocation of licenses on ground of conviction of crime . . . ." (Legis. Counsel's Dig., Sen. Bill No. 1349 (1972 Reg. Sess.) 2 Stats. 1972, Summary Dig., p. 122.) The subsequent amendments to division 1.5 are rooted in the original language and purpose expressed in 1972. The overarching purpose was not to provide an independent basis for suspension or revocation based on section 490, but to ensure that whatever crimes were specified in the individual sections covering licensed professions included the substantial relationship nexus.[4]

---

[3] "Board" includes the Department of Real Estate. (§ 477.)

[4] Cf. section 493 that allows the applicable board to look beyond the record of conviction to inquire into the circumstances of the crime in order to determine if it is substantially related to the qualifications, functions, and duties of the licensee. And section 489 was amended in 1978 to delete "lacks good character" in favor of referring back to section 480 that included the crime must be substantially related to the qualifications for denial of a license. (Stats. 1978, ch. 1161, § 2, p. 3586 [§ 489 was formerly § 116, added by Stats. 1955, ch. 1151, § 1, p. 2145].)

An exposition of the purpose and interplay of section 490 with section 10177 is found in *Donaldson v. Department of Real Estate* (2005) 134 Cal.App.4th 948, 954–955 [36 Cal.Rptr.3d 577]: " 'The commissioner may suspend or revoke the license of a real estate licensee . . . who has . . . [e]ntered a plea of guilty or nolo contendere to, or been found guilty of, or been convicted of, a felony or a crime involving moral turpitude . . . .' Standing alone, this provision would authorize discipline for any conviction involving moral turpitude. It is 'tempered,' however, by section 490, which limits the discretion of licensing authorities. [Citations.] Section 490 states in pertinent part, 'A board may suspend or revoke a license on the ground that the licensee has been convicted of a crime, if the crime is substantially related to the qualifications, functions, or duties of the business or profession for which the license was issued.' Thus a determination that a licensee's conviction justifies discipline cannot rest on the moral reprehensibility of the underlying conduct, but requires a reasoned determination that the conduct was in fact substantially related to the licensee's fitness to engage in the profession. [Fn. 4 omitted.] [Citation.]"

Footnote 4 in *Donaldson v. Department of Real Estate, supra,* 134 Cal.App.4th at page 955 explains: "Prior to the adoption of section 490, the Department had been held to have the power under Business and Professions Code section 10177 to impose discipline for any conviction involving 'moral turpitude,' whether or not the underlying conduct reflected in any articulable manner on the licensee's fitness to practice the profession. (*Jennings v. Karpe* (1974) 36 Cal.App.3d 709 [111 Cal.Rptr. 776].) Section 490 was manifestly intended to rein in that power." Section 490 did not provide an independent basis for discipline, but was intended to add an additional limiting requirement to section 10177's requirements for discipline.

*Pieri v. Fox* (1979) 96 Cal.App.3d 802 [158 Cal.Rptr. 256] likewise demonstrates how the provisions of division 1.5 work in tandem with section 10177. In that case, a plea of guilty to a misdemeanor involving moral turpitude was not sufficient by itself to deny a license where the crime bore no relationship to the applicant's qualifications and the applicant had complied with the division's remedial requirements. Although the language of section 10177 would have permitted denial of the license, section 480 of division 1.5 also applied to limit the effect of section 10177.

In this case, the Department of Real Estate first had to prove the crime constituted moral turpitude under section 10177 and, if established, then secondly, that the crime was substantially related to the qualifications, functions, and duties of a real estate broker. (See *Pieri v. Fox, supra,* 96 Cal.App.3d at p. 807.) The administrative law judge correctly found that the predicate misdemeanor did not involve moral turpitude, making it unnecessary to reach section 490's requirement that the crime additionally be substantially related to the qualifications of the profession.

A petition for a rehearing was denied September 21, 2006, and the opinion was modified to read as printed above.