[No. B208944. Second Dist., Div. Eight. July 22, 2009.]

LONE STAR SECURITY & VIDEO, INC., et al., Plaintiffs and Appellants,
v.
BUREAU OF SECURITY AND INVESTIGATIVE SERVICES, Defendant and Respondent.

**COUNSEL**

Wallace, Brown & Schwartz and George M. Wallace for Plaintiffs and Appellants.

Edmund G. Brown, Jr., Attorney General, Alfredo Terrazas, Assistant Attorney General, Karen B. Chappelle and Shobita Misra, Deputy Attorneys General, for Defendant and Respondent.

**OPINION**

**RUBIN, Acting P. J.**—Appellant Bruce Boyer (Boyer) appeals from the judgment denying his petition for writ of mandate challenging a decision by

the Department of Consumer Affairs, Bureau of Security and Investigative Services (the bureau), to revoke his license as an alarm company qualified manager.[1] Boyer contends (1) his license could not properly be revoked based solely on Business and Professions Code section 490, and (2) the decision to revoke was based on irrelevant evidence and additional relevant evidence was improperly excluded.[2] We affirm.

## FACTS

Boyer and Lone Star are licensed under the Alarm Company Act (§ 7590 et seq.). (See §§ 7590.1, subd. (j) [qualified manager], 7590.2 [alarm company operator].) In September 2003, Boyer was charged by misdemeanor complaint with assault with a firearm (Pen. Code, § 245, subd. (a)(2)); exhibition of a firearm (*id.*, § 417, subd. (a)(2)); carrying a loaded weapon (*id.*, § 12031, subd. (a)); and false imprisonment (*id.*, § 236). The matter was later consolidated with another matter in which Boyer was charged with violence against a former spouse (*id.*, § 243, subd. (e)), and the complaint was further amended to add a charge of disturbing the peace (*id.*, § 415).[3] Boyer pled no contest to disturbing the peace and the remaining five counts were dismissed.[4]

## PROCEDURAL BACKGROUND

In December 2004, the bureau filed an "Accusation," initiating disciplinary proceedings to suspend or revoke Boyer's and Lone Star's licenses pursuant to

---

[1] Boyer is president of Lone Star Security & Video, Inc. (Lone Star). The bureau also revoked Lone Star's license as an alarm company operator, but that decision was reversed following an administrative hearing. Thus, although Lone Star appealed from the judgment affirming the bureau's decision to revoke Boyer's license, Lone Star is not an aggrieved party and has no standing to appeal. (Code Civ. Proc., § 902.) Accordingly, we dismiss Lone Star's appeal. (*Life v. County of Los Angeles* (1990) 218 Cal.App.3d 1287, 1292 [267 Cal.Rptr. 557].)

[2] All further undesignated statutory references are to the Business and Professions Code.

[3] Penal Code section 415 makes it unlawful to (1) fight in a public place or challenge another person in a public place to fight, (2) "maliciously and willfully disturb[] another person by loud and unreasonable noise," and (3) use "offensive words in a public place which are inherently likely to provoke an immediate violent reaction."

[4] At the hearing, defense counsel told the trial court that, if the matter went to trial, he intended to introduce evidence that the victim was a supporter of environmental terrorist causes and that she intentionally lured Boyer into behaving as he did. In accepting the plea, the trial court observed that "based on what has been said on the record, other things said in chambers, that the People's case is fatally flawed, not through any fault of their own but of the conduct of the alleged victim in this matter, both before and after the incident which occurred, which is the subject matter of this case. [¶] And I think it would be a very difficult proposition in this day and age to convince a jury that an acknowledged and known terrorist would be a worthy subject of sympathy or pity sufficient to convict the defendant, particularly on the more serious crimes, although that is a possibility, but I think a prudent leap from the defense point of view. I think this plea is amply justified."

former section 490, which at the time read: "A board may suspend or revoke a license on the ground that the licensee has been convicted of a crime, if the crime is substantially related to the qualifications, functions, or duties of the business or profession for which the license was issued. A conviction within the meaning of this section means a plea or verdict of guilty or a conviction following a plea of nolo contendere." (Stats. 1992, ch. 1289, § 7, p. 6125.)

In response, Boyer wrote to the bureau stating: "[I]n reference to your complaint, please check the records more closely, case #3PN04640, I was not convicted, I entered a plea of 'nolo contendre [sic][.]' [A] 415 is a disturbance, not 'fighting.' In fact, if you review the transcript it was entered that I disturbed the neighborhood 'yelling for the police.' Certainly not a 'criminal act.' " Boyer sought review of the bureau's decision by an informal hearing before the Alarm Company Operator Disciplinary Review Committee (the committee).[5] In a letter accompanying his request for review, Boyer wrote: "Request for Disciplinary Rev. Committee hearing is under protest. I was not convicted, I entered a no-contest, not guilty [plea]. The charge is for a 'verbal' disturbance, and does not affect my license status. [¶] Consider this a request for dismissal."

Boyer and Lone Star appeared with counsel at the disciplinary hearing on May 11, 2005. The gist of their defense was that the victim "was an active sympathizer and supporter of violent environmental terrorist causes, such as the activities of the Earth Liberation Front, and that she had posted in online 'chat' sights [sic] statements effectively acknowledging that she had actively deceived LAPD officers in order to obtain Boyer's arrest." Boyer maintained that under these circumstances his conviction was not substantially related to the qualification, functions, or duties associated with the licenses. The disciplinary committee found "clear and convincing evidence exists to initiate proceedings to suspend or revoke [Lone Star's] alarm company operator license and [Boyer's] alarm company qualified manager certificate."

Boyer and Lone Star sought administrative review. At the hearing on August 28, 2006, the administrative law judge (ALJ) overruled Boyer and Lone Star's relevance objections to admission of the arrest report and the arresting officer's testimony describing the circumstances of Boyer's arrest. The ALJ excluded the transcript of Boyer's plea bargain, reasoning that it contained no relevant evidence, only defense counsel's representations as to what the evidence would have shown if the criminal case had gone to trial. Describing Boyer's arrest, the arresting officer testified that in responding to a radio call on September 2, 2003, he came upon Boyer "holding a rifle pointed at a female who was down on her knees." Boyer told the officer that he was

---

[5] This committee consists of five persons: three persons actively engaged in business as licensed alarm company operators and two members of the public. (§ 7591.17.)

making a citizen's arrest for vandalism based on the victim removing advertising fliers from a sign for Boyer's security company. Boyer was arrested and, at his request, the woman he was holding at gunpoint was placed under citizen's arrest for vandalism.

Boyer testified that prior to September 2, 2003, his company's sign trailer, which was parked on a residential street in Encino, had been repeatedly vandalized. That night, Boyer armed himself with a camera to photograph the license plate of the vandal, as well as a small rifle for protection, and parked in view of the sign to wait and watch. About 10:00 p.m., Boyer saw two people approach the sign trailer. While one stood nearby, the other attacked the trailer. With his car lights off, Boyer drove up the street with the intention of taking a photograph of the vandal to show the police. But as Boyer approached, the individual tearing off signs ran towards Boyer while the other ran away. Concerned for his own safety, Boyer grabbed his unloaded rifle. When the person ran past Boyer, Boyer opened the car door and yelled, " 'You're under arrest,' because maybe they'd think I'm an undercover cop." When this individual failed to stop, Boyer grabbed his rifle and gave chase. As he caught up with the fleeing person, Boyer "uttered in a very clear voice, 'You're under arrest.' And at that point, I saw that it was a woman. . . . [¶] So I passed the powers of arrest as my qualifications to be a qualified manager. Said, 'You're under arrest for vandalism. Sit down and we're going to wait for the police.' She didn't want to sit down. She wants to argue with me. 'You can't arrest me.' I said, 'You're under arrest. Sit down.' " As Boyer yelled for someone to call the police, the woman's companion approached. When the woman stated her intention to leave, Boyer said, " 'No, you can't leave. You're under arrest.' [¶] So I stood on the sidewalk to prevent her from going north. I'm holding the rifle [up against my chest with the barrel upwards]. She comes up and shoves me. And I'm thinking at this point, this is not good. Why is this person—she wants to get away or hurt me or take the rifle. [¶] . . . I almost drop the clip on the ground. The other guy is now trying again to circle around behind me. I took the clip and I inserted it in the magazine well. I did not chamber a round and I did not take the safety off."

After taking the matter under submission, the ALJ issued a written decision finding Boyer "used deadly force to protect a sign from vandalism. This reveals an ignorance of the law necessary for a person who is licensed to protect the property and person of California citizens, and it evinces a serious lack of judgment on [Boyer's] part." Concluding that this constituted good cause to discipline Boyer, the ALJ nevertheless stayed the order of revocation and placed Boyer's license on probation for three years. The ALJ further concluded that cause was not established to discipline Lone Star, the alarm company operator, because the conviction was against Boyer and no theory of derivative liability was pled or argued.

In May 2007, Boyer petitioned the superior court for a writ of mandate directing the bureau to set aside the revocation of Boyer's license. Following a hearing on May 2, 2008, the trial court denied the petition. Among other things, it found substantial evidence supported the bureau's finding that Boyer's conviction was substantially related to his fitness as an alarm company qualified manager: "[T]he conduct for which Boyer was convicted, and for which he was disciplined administratively, . . . was directly related to his alarm and security business, and no evidence in the administrative record shows or even purports to show otherwise."

Boyer filed a timely notice of appeal.[6]

## DISCUSSION

### 1. *Standard of Review*

"In ruling on an application for a writ of mandate following an order of suspension or revocation, a trial court is required to determine, based on its independent judgment, ' "whether the weight of the evidence supported the administrative decision." ' [Citation.] . . . On appeal, we 'need only review the record to determine whether the trial court's findings are supported by substantial evidence.' [Citation.] ' "We must resolve all evidentiary conflicts and draw all legitimate and reasonable inferences in favor of the trial court's decision. [Citations.] Where the evidence supports more than one inference, we may not substitute our deductions for the trial court's. [Citation.] We may overturn the trial court's factual findings only if the evidence before the trial court is insufficient as a matter of law to sustain those findings. [Citation.]" ' [Citation.]" (*Lake v. Reed* (1997) 16 Cal.4th 448, 456–457 [65 Cal.Rptr.2d 860, 940 P.2d 311]; see *Lam v. Bureau of Security & Investigative Services* (1995) 34 Cal.App.4th 29, 35–36 [40 Cal.Rptr.2d 137] (*Lam*) [trial court applies its independent judgment to review bureau's decision to revoke license; appellate court reviews the trial court's determination for substantial evidence]; see also *Robbins v. Davi* (2009) 175 Cal.App.4th 118 [95 Cal.Rptr.3d 792] (*Robbins*).) On appeal, we may take guidance from the findings made by the administrative agency in determining whether the trial court's judgment is supported by substantial evidence. (*Lam, supra*, at p. 36.)

The admission or rejection of evidence by an administrative agency is not grounds for reversal unless the error has resulted in a miscarriage of justice. (*McCoy v. Board of Retirement* (1986) 183 Cal.App.3d 1044, 1054 [228

---

[6] This court denied the bureau's motion to dismiss the appeal for failure to file an adequate record.

Cal.Rptr. 567].) In other words, it must be reasonably probable a more favorable result would have been reached absent the error. (*Brokopp v. Ford Motor Co.* (1977) 71 Cal.App.3d 841, 853–854 [139 Cal.Rptr. 888].) Such error " 'is not prejudicial if the evidence "was merely cumulative or corroborative of other evidence properly in the record," or if the evidence "was not necessary, the judgment being supported by other evidence." [Citation.]' " (*McCoy, supra,* 183 Cal.App.3d at p. 1054, quoting *Rue-Ell Enterprises, Inc. v. City of Berkeley* (1983) 147 Cal.App.3d 81, 91 [194 Cal.Rptr. 919].)

2. *Section 490 Provides a Separate Basis for Discipline Without Regard to Whether Discipline Would Also Be Appropriate Under Section 7599.61, Subdivision (c)*

Relying on *Petropoulos v. Department of Real Estate* (2006) 142 Cal.App.4th 554, 562 [47 Cal.Rptr.3d 812] (*Petropoulos*), appellants contend Boyer's license could not be revoked absent a conviction for a crime, an element of which was illegally using, carrying, or possessing a dangerous weapon within the meaning of section 7599.61, subdivision (c).[7] They argue that Boyer's conviction for disturbing the peace does not satisfy this requirement. We disagree.

When the bureau initiated disciplinary proceedings against Boyer in 2004, former section 490 allowed revocation of a license "on the ground that the licensee has been convicted of a crime, if the crime is substantially related to the qualifications, functions, or duties of the business or profession for which the license was issued." (Stats. 1992, ch. 1289, § 7, p. 6125.) In *Petropoulos*, the court held that former section 490 did not provide an independent basis for revoking a license, but instead limited the circumstances upon which a license could be revoked on the basis of conviction of a crime under other statutes. For example, in *Petropoulos*, the court held that a real estate broker's license could be revoked only on the grounds set forth in former section 10177, which then included conviction of a crime involving moral turpitude as a ground for revocation. (Stats. 2003, ch. 902, § 1.) The court in *Petropoulos* concluded that then section 490 operated to require that the crime of moral turpitude also be substantially related to the qualifications, functions, or duties of a licensed real estate broker; but a conviction that did not satisfy former section 10177 could not be the basis for revocation of a real estate broker's license solely under section 490.

---

[7] Section 7599.61 sets forth various grounds for suspension or revocation of an alarm company operator or qualified manager's license. Subdivision (c) identifies conviction "of any felony or misdemeanor including illegally using, carrying, or possessing a dangerous weapon" as one such ground.

■ After *Petropoulos*, the Legislature amended section 490 to add subdivision (d), which reads: "The Legislature hereby finds and declares that the application of this section has been made unclear by the holding in *Petropoulos v. Department of Real Estate* (2006) 142 Cal.App.4th 554 [47 Cal.Rptr.3d 812], and that the holding in that case has placed a significant number of statutes and regulations in question, resulting in potential harm to the consumers of California from licensees who have been convicted of crimes. Therefore, the Legislature finds and declares that this section establishes an independent basis for a board to impose discipline upon a licensee, and that the amendments to this section made by Senate Bill 797 of the 2007–08 Regular Session do not constitute a change to, but rather are declaratory of, existing law." (§ 490, italics added, as amended by Stats. 2008, ch. 179, § 3.) But a declaration by the Legislature that a statutory amendment is declaratory of existing law is not binding or conclusive on a court construing the statute; it is, however, a factor entitled to due consideration. (*McClung v. Employment Development Dept.* (2004) 34 Cal.4th 467 [20 Cal.Rptr.3d 428, 99 P.3d 1015] (*McClung*).)[8] Thus, we must determine whether the amendment to section 490 is, indeed, declaratory of existing law. We conclude that it is.

■ Section 490 is part of division 1.5 of the Business and Professions Code, which is broadly applicable to administrative agencies generally. It has been used in conjunction with Government Code sections applicable to a specific trade or profession to impose discipline in at least two reported cases: *Windham v. Board of Medical Quality Assurance* (1980) 104 Cal.App.3d 461, 465 [163 Cal.Rptr. 566] (medical doctor convicted of tax evasion and filing a fraudulent tax return), and *Golde v. Fox* (1979) 98 Cal.App.3d 167, 171 [159 Cal.Rptr. 864] (real estate broker convicted of possession of marijuana). The plain language of former section 490 indicates that it may also be the sole source of discipline: "A board may suspend or revoke a license on the ground that the licensee has been convicted of a crime, if the crime is substantially related to the qualifications, functions, or duties of the business or profession for which the license was issued. . . ." (Stats. 1992, ch. 1289, § 7, p. 6125.) That the Legislature has opted to create a two-track system to make discipline available under both section 490 and other Government Code sections

---

[8] Appellants' reliance on *McClung* for the proposition that *Petropoulos* was controlling, notwithstanding the subsequent amendment to section 490, is misplaced. In *McClung*, the court held that where a statute had been finally and conclusively interpreted by the courts (i.e., by the Supreme Court), the Legislature could not retroactively amend the statute. But former section 490 was not *finally and conclusively* interpreted by the courts because *Petropoulos* was a decision by the Court of Appeal, not the Supreme Court. Accordingly, we are not bound by it. (*Fire Ins. Exchange v. Abbott* (1988) 204 Cal.App.3d 1012, 1023 [251 Cal.Rptr. 620].)

addressing individual trades is supported by the Legislature's 2008 amendment. Thus, we conclude that the bureau had the power to revoke Boyer's license under former section 490 alone, without regard to whether revocation could also be based on section 7599.61, subdivision (c). To the extent the court in *Petropoulos* held to the contrary, given the subsequent legislative amendment, we respectfully disagree with that court.[9]

3. *There Was Substantial Evidence That Boyer's Conviction Was Substantially Related to the Qualifications, Functions, and Duties of a Qualified Alarm Manager*

Appellants contend Boyer's conviction for disturbing the peace could not be the basis for revocation of Boyer's license under section 490. They argue that (1) the ALJ and trial court improperly considered evidence relating to the circumstances of Boyer's arrest and refused to consider evidence relating to his plea and (2) there was no showing that the crime of disturbing the peace reflected on Boyer's qualifications as a licensee under the Alarm Company Act (§ 7590 et seq.). We disagree.

Appellants' first argument—that the circumstances of his arrest were irrelevant and could not properly be considered by the ALJ or trial court—is directly contrary to the law. Section 493 provides that, in a proceeding to suspend or revoke a license "upon the ground that the . . . licensee has been convicted of a crime substantially related to the qualifications, functions, and duties of the licensee in question, the record of conviction of the crime shall be conclusive evidence of the fact that the conviction occurred, but only of that fact, *and the board may inquire into the circumstances surrounding the commission of the crime in order . . . to determine if the conviction is substantially related to the qualifications, functions, and duties of the licensee in question.*" (Italics added.) Under section 493, evidence of the circumstances surrounding Boyer's commission of disturbing the peace was admissible to determine whether the conviction was substantially related to his qualifications, functions, and duties as a licensed qualified alarm manager. Moreover, the officer's testimony of what he observed and the unsworn arrest report were properly admitted into evidence on this issue. (See Gov. Code,

---

[9] This conclusion is consistent with our recent opinion in *Robbins*, in which we held that a real estate broker's license was properly revoked pursuant to section 490 based on his three convictions for misdemeanor violations of the fire protection and prevention provisions of the Los Angeles Municipal Code. Revocation was upheld because those convictions were substantially related to the qualifications, functions, or duties of a licensed real estate broker; it was irrelevant whether the convictions also satisfied former section 10177, subdivision (b), which required conviction of a crime involving moral turpitude. (*Robbins, supra,* 175 Cal.App.4th at p. 123, fn. 5.)

§ 11513;[10] see, e.g., *Hildebrand v. Department of Motor Vehicles* (2007) 152 Cal.App.4th 1562, 1570–1571 [62 Cal.Rptr.3d 234] [officer's unsworn arrest report admissible in administrative proceeding to suspend driver's license].) Boyer does not address section 493 either in his opening or reply brief.

Appellants' related argument—that the judgment must be reversed because the ALJ improperly refused to consider the transcript of proceedings in which Boyer pled no contest to disturbing the peace—is also without merit. Even assuming that the transcript is "the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs . . ." (Gov. Code, § 11513, subd. (c)), its exclusion could only compel reversal if it is reasonably probable that appellants would have obtained a more favorable result absent the error. That is not the case here. A more favorable result is not likely if the ALJ considered defense counsel's representations at the plea hearing to the effect that the victim was a supporter of environmental terrorist causes and related matters. Even if this were true, it did not justify Boyer chasing her down a residential street carrying a rifle and then holding her at gunpoint.

■ Finally, appellants' contention that there was insufficient evidence to support the bureau's finding that Boyer's conviction was substantially related to the qualifications, functions, and duties of a qualified alarm manager, also fails. Section 7597.3, subdivision (c) of the Alarm Company Act proscribes qualified managers from drawing a weapon without proper cause. The ALJ's finding that Boyer improperly "used deadly force to protect a sign from vandalism," can be readily understood as a finding that Boyer drew his weapon without proper cause in violation of section 7597.3, subdivision (c). The evidence that Boyer, armed with a rifle, chased a woman down a residential street at 10:00 p.m. and then held her at gunpoint because he saw her tearing fliers off his company sign trailer is sufficient to support the finding that the circumstances of Boyer's disturbing the peace substantially related to the qualifications, functions, and duties of an alarm company qualified manager.

---

[10] In part, Government Code section 11513 provides: "(c) [An adjudicatory hearing under the Administrative Hearing Act] need not be conducted according to technical rules relating to evidence and witnesses, except as hereinafter provided. Any relevant evidence shall be admitted if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs, regardless of the existence of any common law or statutory rule which might make improper the admission of the evidence over objection in civil actions. [¶] (d) Hearsay evidence may be used for the purpose of supplementing or explaining other evidence but over timely objection shall not be sufficient in itself to support a finding unless it would be admissible over objection in civil actions. An objection is timely if made before submission of the case or on reconsideration. [¶] (e) The rules of privilege shall be effective to the extent that they are otherwise required by statute to be recognized at the hearing. [¶] (f) The presiding officer has discretion to exclude evidence if its probative value is substantially outweighed by the probability that its admission will necessitate undue consumption of time."

## DISPOSITION

The judgment in favor of the bureau is affirmed. The appeal of Lone Star is dismissed.

Bigelow, J., and Bauer, J.,[*] concurred.

The petition of appellant Bruce Boyer for review by the Supreme Court was denied December 2, 2009, S176740.

---

[*]Judge of the Orange Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.