Filed 10/23/13  Toler v. Jones CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JOEL THOMAS TOLER,<br><br>　　　　Plaintiff and Appellant,<br><br>　　v.<br><br>DAVE JONES, as Insurance Commissioner, etc.,<br><br>　　　　Defendant and Respondent. | B244547<br><br>(Los Angeles County<br>Super. Ct. No. BS136506) |

　　　　APPEAL from a judgment of the Superior Court of Los Angeles County.  Luis A. Lavin, Judge.  Affirmed.


　　　　John M. Rorabaugh for Plaintiff and Appellant.


　　　　Kamala D. Harris, Attorney General, Paul D. Gifford, Assistant Attorney General, W. Dean Freeman and Marta L. Smith, Deputy Attorneys General for Defendant and Respondent.

Joel Thomas Toler (appellant) appeals from a judgment denying his petition for writ of administrative mandamus and damages. Through the writ, appellant sought to set aside an order suspending his bail agent license for 30 days imposed by Dave Jones, the Insurance Commissioner of the State of California (Commissioner or respondent). We find no error in the judgment and affirm.

## CONTENTIONS

Appellant contends that his actions did not qualify for discipline under California Code of Regulations, title 10, sections 2183 and 2183.2. Appellant further contends that he was authorized to commit the acts in question and did not violate any standards set forth by the Insurance Code.

## FACTUAL BACKGROUND

Appellant was licensed by the Commissioner to act as a bail agent starting in December 2003.

**The Gilmore and Baldwin matter**

In March 2008, appellant's agency issued bail bonds for Adam Baldwin (Baldwin) and his wife, Akela Gilmore (Gilmore). Gilmore was in custody on a separate case from Baldwin. The bail bond issued for Baldwin was exonerated on May 6, 2008, when he was sentenced. The bail bond for Gilmore was exonerated on May 19, 2008, when she was released on her own recognizance. Neither Baldwin nor Gilmore had any bail bond in effect on May 29, 2008.

Appellant discovered the address given for Baldwin on his bond application was invalid. In addition, appellant checked with Baldwin's stated employer and learned that Baldwin was not employed at that place of business. Appellant began an investigation to locate Baldwin and Gilmore. Appellant was informed by the indemnitor for Baldwin and Gilmore that Baldwin may have left for the east coast. After running a search on Gilmore's social security number, appellant located an address for her in Vacaville.

On May 29, 2008, appellant informed local law enforcement that he was going to be conducting a compliance check. At approximately 10:00 p.m. on that date, appellant went to the apartment in Vacaville where Baldwin resided and knocked on the door.

2

Gilmore answered and told appellant that she had court papers showing that both she and Baldwin were no longer out on bail, and asked him to wait while she retrieved them. After waiting outside for a few minutes, appellant observed that Gilmore was on the telephone and not looking for papers. Appellant knocked on the door a second time. When Gilmore returned to the door she said she needed more time to find the papers. Appellant responded that he was coming inside and pushed open the door.

Once inside the apartment, appellant was confronted by Gilmore's father, Larry Gilmore (Mr. Gilmore), who asked appellant numerous times to provide him with documentation of his identity and his authority to enter the residence without a warrant. A verbal and physical confrontation ensued. At some point Mr. Gilmore picked up a baseball bat that was in the house. During the melee, appellant was struck with the baseball bat and Mr. Gilmore was hit in the chest with a taser dart fired by appellant.

Police responded to the incident. Appellant was arrested on two misdemeanor charges: committing the act of unlawful entrance into a noncommercial dwelling, and battery.

**The Gordon and Gordon-Compton matter**

In 2008, appellant issued a bail bond to secure the release of Jeffrey Moore (Moore). The indemnitor on the bond was Thomas Hughes (Hughes). Hughes received some mail at the home of Terry Compton-Gordon and Donald Gordon, parents of his childhood friend, but had never resided there. Hughes used the Compton-Gordon address on the bail application. Moore subsequently became a bail fugitive. Appellant filed a lawsuit against Hughes, and attempted to serve Hughes with process at the Compton-Gordon residence. The process server was informed, both at the time he attempted service and by telephone the next day, that Hughes did not reside there.

On January 19, 2009, appellant went to the Compton-Gordon home to search for Moore or Hughes. Before he arrived at the house, appellant made a telephone call to law enforcement to inform them he might affect the apprehension of a fugitive named Moore. Appellant was met at the door by Ms. Compton-Gordon, who informed him that neither Moore nor Hughes lived at the residence. Mr. Gordon then came to the door and

3

explained to appellant that he had previously informed appellant's process servers that Hughes did not live at that residence. Mr. Gordon repeatedly asked appellant to get off his property.

Appellant asked Mr. Gordon to come out of the house so they could "settle it," and referred to Mr. Gordon as a "coward." During this time, Ms. Compton-Gordon called 911 to summon the police. Appellant had an angry demeanor and Mr. Gordon believed appellant was challenging him to fight. Appellant told Mr. Gordon, "People like me can make people like you disappear." While saying this, appellant pulled his jacket back and rested his hand on the butt of his gun which was in a holster on his hip. Mr. Gordon felt threatened. Appellant eventually left the residence.

The police encountered appellant as he left the residence. Appellant did not have any documentation with him authorizing him to apprehend a bail fugitive. After all parties were interviewed, appellant was arrested for exhibiting a firearm and making criminal threats.

## PROCEDURAL HISTORY

On April 30, 2010, the Commissioner filed an accusation alleging that certain actions of appellant in 2008 and 2009, including those described above, constituted grounds for suspension or revocation of appellant's license pursuant to the Insurance Code.[1]

On January 31, February 1 through 4, and February 7 and 8, 2011, a hearing regarding the accusations was held in Alameda County before an administrative law judge (ALJ). On March 30, 2011, the ALJ submitted a proposed decision concluding that discipline of appellant's license was not indicated. The ALJ found that appellant had "made mistakes" but that his actions "do not show a systemic pathology reflective of a

---

[1] The Insurance Code vests the Commissioner with the authority to regulate the licensure of individuals in the bail bond business, including bail agents. (Ins. Code, §§ 1800-1802; 1804-1805; 1807; 1812.)

4

defect in character or integrity as to fatally impact respondent's bail agent license and licensing rights."

The Commissioner considered and rejected the ALJ's proposed decision and proposed action. On December 12, 2011, the Commissioner issued a decision and order of suspension. The Commissioner cited Insurance Code sections 1805, 1806, and 1807, which govern denial, suspension and revocation of a bail license. The Commissioner also relied on former Penal Code section 1299.06 (repealed 2010), which required a bail agent, before apprehending a bail fugitive, to have in his possession "proper documentation of authority to apprehend."[2]

The Commissioner concluded that cause existed to suspend or revoke appellant's license pursuant to Insurance Code sections 1805, subdivision (c), and 1807,[3] on the grounds that appellant did not have an understanding of the obligations and duties of bail. The Commissioner explained that appellant's "failure to verify the bond status of both [Gilmore] and [Baldwin], his unauthorized entry into the Gilmore household, and his failure to abide by the requirements of the California Penal Code in regards to bail fugitives in both the Gilmore and Compton-Gordon incidents are indicative of a lack of understanding of the obligations and duties of a bail agent."

The Commissioner further concluded that cause existed to suspend or revoke appellant's license under Insurance Code sections 1805, subdivision (h),[4] and 1807. The Commissioner noted that appellant failed to verify the bond status of both Gilmore and

---

[2]    The Commissioner erroneously cited the statute as former Penal Code section 1299.07.

[3]    Insurance Code section 1805, subdivision (c), provides that the Commissioner may decline to issue a bail license if he is not satisfied that the applicant has an understanding of the obligations and duties of bail. Section 1807 provides that the commissioner may suspend or revoke any bail license for any cause for which he could deny a bail license.

[4]    Insurance Code section 1805, subdivision (h) provides that the commissioner may decline to issue a bail license if he is not satisfied that the applicant is a fit and proper person to hold the license.

5

Baldwin before going to the Gilmore residence; that he had never met either Gilmore or Baldwin and had no photograph or other document to assist in identifying either of them; that he forced his way into the residence without possession of a warrant or other documentary authorization; that he failed to leave as requested by the apartment's legal tenant; and that he engaged in a confrontation which resulted in Gilmore's father being hit in the chest with a taser dart. Considering the record as a whole, the Commissioner concluded, appellant's actions were not a credit to the bail bond profession. The Commissioner ordered that appellant's license and licensing rights be suspended for a period of 30 working days, starting Monday, January 16, 2012, and ending Wednesday, February 15, 2012.

On January 6, 2012, appellant requested reconsideration of the decision. On the same date, the Commissioner granted a stay of the order of suspension until February 10, 2012. The stay was extended until February 17, 2012.

On February 17, 2012, the Commissioner issued a decision and first amended order of suspension, suspending appellant's license for 30 days.

On March 15, 2012, appellant filed a petition for writ of administrative mandamus under Code of Civil Procedure section 1094.5 and damages. On October 9, 2012, the writ was denied.

Appellant filed this appeal on October 15, 2012.

## DISCUSSION

### I. Standard of review

Code of Civil Procedure section 1094.5 "structures the procedure for judicial review of adjudicatory decisions rendered by administrative agencies." (*Topanga Assn. for a Scenic Community v. County of Los Angeles* (1974) 11 Cal.3d 506, 514.) In a proceeding inquiring into the validity of a final administrative order, a trial court's review is limited to the question of whether the administrative agency proceeded without, or in excess of jurisdiction; whether there was a fair trial; and whether there was a prejudicial abuse of discretion. A prejudicial abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by

6

the findings, or the findings are not supported by the evidence. (Code Civ. Proc., § 1094.5, subd. (b).)

We review the trial court's findings and decision for substantial evidence. (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 824.) Under this standard, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the trial court judgment. Therefore, if there is any doubt as to the sufficiency of the evidence to sustain a finding, we should resolve that doubt in favor of the finding. (*Moran v. Board of Medical Examiners* (1948) 32 Cal.2d 301, 308-309.)

## II.  The appeal is not moot

We first address the Commissioner's contention that the appeal is moot because the suspension of appellant's license terminated on December 8, 2012. The Commissioner argues that because the 30-day suspension was completed prior to the filing of the record on appeal in this case and prior to the filing of appellant's opening brief, the appellate decision in this matter can have no practical impact or provide the parties any effectual relief.

We find the appeal is not moot. The question of mootness as applied in writ proceedings is governed by Code of Civil Procedure section 1094.5, subdivision (g). The statue provides that "[w]here any final administrative order or decision is the subject of proceedings under this section, if the petition shall have been filed while the penalty imposed is in full force and effect, the determination shall not be considered to have become moot in cases where the penalty imposed by the administrative agency has been completed or complied with during the pendency of the proceedings." (Code Civ. Proc., § 1094.5, subd. (g); see also *Medical Board v. Superior Court* (2001) 88 Cal.App.4th 1001, 1008 ["Code of Civil Procedure section 1094.5, subdivision (g) restrains the invocation of mootness where the petitioner had standing at the time the petition was filed"].)

Thus, if a petitioner had a beneficial interest in the proceeding at the commencement of the proceeding, the claimed loss of this beneficial interest during the

pendency of the proceedings is not a basis for dismissal. (Code Civ. Proc., § 1094.5, subd. (g); *Medical Board v. Superior Court, supra*, 88 Cal.App.4th at p. 1009.)

In this matter, appellant filed his writ while the penalty was still in full force and effect. The penalty was imposed upon appellant on February 17, 2012. Appellant's writ was filed on March 15, 2012. The writ was denied on October 9, 2012, and appellant filed this appeal on October 15, 2012. Appellant's penalty was thereafter imposed between the dates of November 8, 2012, and December 8, 2012. Thus, although the penalty was completed during the pendency of these proceedings, the matter is not moot.

## III. Substantial evidence supports the trial court's decision

Appellant argues that his actions do not qualify for discipline under the Insurance Code or related regulations.

### A. The Insurance Code provides an independent basis for discipline

Appellant first argues that the court improperly failed to cite or rely on the regulations promulgated pursuant to the authority granted the Commissioner under the Insurance Code. (See Cal. Code Regs., tit. 10, §§ 2183, 2183.2.)

Appellant cites no authority for his position the Commissioner must rely upon the cited regulations in imposing a license suspension. As the trial court noted, the Commissioner disciplined appellant pursuant to Insurance Code section 1805, after finding that appellant did not understand the duties and obligations of a bail agent and was not a fit and proper person to hold such a license. The court explained:

> "[Appellant] asserts that the February 17, 2012 decision did not adequately cite or rely on certain regulations -- specifically, [Insurance Code] section[s] 2183 and 2183.2 -- when imposing discipline. This argument is irrelevant. As charged in the Accusation and stated in the subsequent decision, Respondent disciplined [appellant] for violating Insurance Code [section] 1805. While [section] 1805 concerns the qualification for a bail agent's license, the Insurance Code is clear that any failure of those qualifications by a licensed agent is a ground for discipline, suspension or revocation. See Insurance Code [section] 1807. Given the clear statements in the decision of the legal basis for disciplining [appellant], Respondent's failure to specifically mention sections 2183 or 2183.2 is of no moment."

8

We agree that sections 1805 through 1807 of the Insurance Code provide sufficient authority for the Commissioner's decision. As stated in the California Code of Regulations, title 10, section 2183.2:

> "For purposes of denial, suspension, revocation, and/or restriction of a license or license application, statutes within the Insurance Code list specific grounds and also allow for action based upon findings that include, but are not limited to, the licensee or applicant lacking integrity, having a poor business reputation, or that permitting the licensee or applicant to hold an insurance license is against the public interest. The following is a partial list of crimes or acts that are substantially related to the qualifications, functions or duties of an insurance licensee . . . ."

Thus, the regulation makes clear the Insurance Code itself provides specific grounds for suspension of a license. The regulation merely provides a "partial list" of crimes or acts which also support license discipline. Under the circumstances, the trial court correctly concluded that the Commissioner's reliance on the Insurance Code was proper.[5]

---

[5] *Donaldson v. Department of Real Estate* (2005) 134 Cal.App.4th 948 (*Donaldson*) is not helpful to appellant. In *Donaldson*, a real estate agent challenged the revocation of his license based on his conviction of unlawful intercourse with a minor. In revoking the agent's license, the commissioner relied solely on a regulation which authorized revocation where a licensee is convicted of a sex crime involving a nonconsenting participant. While conceding that the 16-year-old may have participated willingly in the conduct in question, the commissioner concluded that her age rendered her incapable of giving legal consent to that conduct. However, because there was no legal basis for such a presumption of nonconsent, and the single regulation was the sole basis for the order, the Court of Appeal reversed the judgment denying the appellant's petition for writ of administrative mandamus. Thus, the reversal was necessary because the specific regulation cited did not match the conduct alleged. Here, the Commissioner is not relying on a specifically defined crime listed in a regulation. Instead the Commissioner is relying on general standards for entitlement to hold a bail license. *Donaldson* does not stand for the proposition that regulations, as opposed to statutes, must always be relied upon for the imposition of discipline.

*Petropoulos v. Department of Real Estate* (2006) 142 Cal.App.4th 554 is also unhelpful to appellant. The case discussed former section 490 of the Business & Professions Code. The *Petropoulos* court determined that the statute did not provide an independent basis for revoking a license, but instead limited the circumstances under

9

## B. *The evidence supports the findings of the trial court*

Appellant further argues the facts in the record do not support the imposition of discipline. In contrast, appellant argues, the record shows lawful actions which exhibit an understanding of the duties and obligations of bail. Appellant claims that the record shows he displayed "more than reasonable diligence" in ascertaining the correct bail status of the defendants. He points to evidence that his business had a system for determining the status of bail bonds, and that the Solano County courts, at the time, did not regularly inform bail agents when bonds were exonerated.

However, it is undisputed that the bail bonds of both Gilmore and Baldwin had been exonerated before the time that appellant forced his way into their residence and ended up in a violent physical altercation. The trial court noted that "[w]hile the law gives a bail agent broad powers and discretion in effecting the arrest and surrender of a bailee, those powers and discretion disappear as soon as the obligation on the surety is discharged by exoneration. See Penal Code [section] 1301." The trial court found that appellant did not appear to understand this concept because he did not obtain an accurate report on the status of the subject bail bonds before entering the Gilmore home. Appellant admitted that when he went to the Baldwin/Gilmore residence, he was not aware of their current bail status. Under the circumstances, the trial court reasonably concluded that any purported efforts by appellant to check on the status of the subject bail bonds were "unreasonable and inadequate." In addition, the court noted that appellant took no action to verify Gilmore's statement to him that both her bond and that of Baldwin had been exonerated. These findings regarding the Baldwin/Gilmore incident are amply supported by the evidence in the record. The court expressed its opinion that "[t]his incident, by itself, supports the suspension of [appellant's] license for thirty days."

which a license could be revoked on the basis of conviction of a crime. (*Petropoulos, supra*, at p. 564; *Lone Star Security & Video, Inc. v. Bureau of Security & Investigative Services* (2009) 176 Cal.App.4th 1249, 1255.) Here, in contrast, the cited provisions of the Insurance Code provide an independent basis for revocation of a bail agent license.

10

Appellant also argues that it was his diligence that took him to the Baldwin/Gilmore residence, and that the record shows appellant was attacked by Mr. Gilmore and acted only in self-defense after being assaulted with a baseball bat. Again, appellant is merely highlighting facts that support his perspective. After reviewing all the facts in the record, the trial court concluded:

> "[Appellant's] poor judgment is another, independent reason for suspending his license. This poor judgment is reflected by his actions in forcing his way into the Gilmore apartment and becoming involved in a violent physical altercation with Larry Gilmore, as well as refusing to leave the Gordons' property until the police were called. The nature of these confrontations, both involving non-bailees on their private property, shows [appellant's] unfitness to act in a fiduciary capacity or to maintain the standards of fairness and honesty required of a bail agent."

The record supports the trial court's findings that appellant forced his way into the Gilmore apartment against the wishes of the residents, and that this act led to the violent confrontation which ensued with an individual who was not the subject of any bond. The record also supports the trial court's conclusions that appellant refused to leave the home of the Compton-Gordons despite their repeated representations that neither the bail bond fugitive nor the cosigner on the bail bond resided there. The record further shows that appellant brandished a weapon and the police were called. These threats and acts of violence support the finding of unfitness under Insurance Code section 1805.

Finally, appellant argues that no current statute or regulation requires possession of proper documentation when attempting to apprehend bail fugitives. The trial court noted, "documentation may not be currently required under the Penal Code, [but appellant] could have defused [*sic*] both incidents if he had presented the occupants with information about his authority to apprehend the alleged bail fugitives." The record shows that in the Baldwin/Gilmore incident, appellant was asked repeatedly to show documentation of his identity and his authority to enter the residence without a warrant. While such documentation may not be required, the trial court reasonably concluded that the accessibility of such paperwork would have diffused the situation.

11

The failure to possess a warrant or other documentation, in and of itself, may not form the basis for discipline.  However, this was not the only reason for the commissioner's finding of misconduct.  Ample other evidence, described above, supports the trial court's finding that appellant acted in disregard of his duties and obligations.

In sum, while appellant points out facts supportive of his position, sufficient evidence existed in the record to support the trial court's decision upholding the Commissioner's underlying determination of misconduct.

## DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.

_____, J.
CHAVEZ

We concur:

_____, Acting P. J.
ASHMANN-GERST

_____, J.*
FERNS

_____
* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.