Filed 4/2/24  Hoang v. Medical Board of California CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| LUCAS TRI HOANG, | C098645 |
| Plaintiff and Appellant, | (Super. Ct. No. 34-2022-80003828-CU-WM-GDS) |
| v. | |
| MEDICAL BOARD OF CALIFORNIA, | |
| Defendant and Respondent. | |

Following an administrative hearing, the Medical Board of California (the Medical Board) denied Lucas Tri Hoang's application for a physician's and surgeon's license, finding he failed to demonstrate he was safe to practice medicine after having been disciplined by and then terminated from his internal medicine residency program.  Hoang challenged the Medical Board's decision by petition for writ of mandate.  The trial court denied the petition, Hoang appeals, and we affirm.

1

# FACTUAL AND PROCEDURAL BACKGROUND

Hoang graduated from medical school in May 2017. In July 2017, he began a residency program (also known as a postgraduate training program) in internal medicine at Louisiana State University Health Sciences Center in Shreveport (hereafter, the "residency program" or "the program"). A residency in internal medicine normally lasts three years. Hoang successfully completed the first year of the program, but in December 2018 he was placed on probation and then suspended, and in February 2019 he was terminated.

In June 2019, Hoang applied for a physician's and surgeon's license with the Medical Board. He disclosed on his application that he had been "repeatedly disciplined" and terminated by the residency program, but he stated those actions were based on "unfounded accusations or false allegations." He also submitted various documents to the Medical Board as part of the application process, including several performance evaluations from the residency program, at least two of the underlying disciplinary notices, and various other documents regarding the accusations against him. The documents submitted *by Hoang* show the following:

Dr. Karina Sulaiman, the director of the residency program, became aware of concerns about Hoang's performance during the first six or seven months of his residency. Concerns included: failing to comply with instructions, being rude and aggressive to nursing staff, receiving an extremely low score (2nd percentile) on an in-training examination, and making mistakes involving patient care.

On January 12, 2018, Dr. Lauren Beal, the associate director of the residency program, completed an evaluation of Hoang based on "feedback from attendings" that stated there were "several areas of concern," including: "His patient care lacks attention to detail. Professionalism is an issue with regard to respectfulness of what attendings tell him. For example, he ordered an MRI on a patient after being explicitly told not to order it. Attendings recommend that he work on following instructions. He has not been

2

responsive to feedback and needs to work to be more open to suggestions." Dr. Beal gave him a score of 1 out of 5 (remedial) in several areas, including interpersonal and communication skills and professionalism, as well as some areas of medical knowledge and patient care. Hoang acknowledged receiving a copy of the evaluation.

In July 2018, Hoang received an end-of-year summary evaluation. Although he received many positive comments, negative comments included: "There were . . . a few instances where he made a clinical decision that was inappropriate and acted on it without communicating with the resident first"; "He does not take responsibility for his mistakes"; and "not performing at the level of an intern with 6+ months of training." His overall score was 3.01 (with a score of 3 signifying "competent"), but he was rated below 3 in the areas of interpersonal/communication skills, medical knowledge, and patient care.

On December 11, 2018, Dr. Sulaiman provided written notice to Hoang that he was being placed on probation because his performance was "well below what is expected for a physician at your level of training." The notice cited Hoang's "deficiencies in medical knowledge" and "issues with communication and respect for authority." It noted, "During your recent ward rotation assignment you were found to have made potentially life-threatening errors of judgment in terms of patient care and also failed to follow the direct orders of your supervising attending. These were discussed with you on December 5th 2018 and you did acknowledge your role in these decisions." Hoang signed the notice on December 12, 2018, to acknowledge he had received it, but he also wrote on it that he intended to appeal.

On January 5, 2019, Dr. Vinh Nguyen completed an evaluation of Hoang for the period from December 1, 2018, through December 15, 2018. Dr. Nguyen gave Hoang a score of 1 out of 5 (remedial) in several areas, including medical knowledge, and gave the following two examples: (1) Hoang pushed 12 units of insulin IV in a type 1 diabetic patient with a high glucose level, and (2) Hoang failed to order an interventional

3

radiology (IR) consult he (i.e., Dr. Nguyen) had repeatedly asked for, which delayed "IR's evaluation and subsequently [led] to the patient not receiving the procedure and having to return to the hospital a week later." Hoang reviewed and signed the evaluation on January 7, 2019, and wrote, "Thank you so much for your valued feedback."

On February 12, 2019, Dr. Sulaiman provided written notice to Hoang that he was terminated from the program. The notice cited errors in medical judgment, including: inappropriate use of opioids in patient care, inappropriate use of IV insulin in diabetes, inappropriate use of potassium in a patient with a rising potassium, and treating tachycardia without an EKG. It also cited Hoang's failure to follow the direct orders of a supervisor on several occasions, including not removing a central line when instructed to do so. Finally, it cited inappropriate behavior toward interns, including instructing interns to withhold data from the supervising attending, calling an intern a " 'tattle tale,' " telling other residents and students this intern would kill or harm patients, and pushing this intern to tears.

On July 14, 2019, Dr. Sulaiman wrote a letter "To whom it may concern" stating Hoang was terminated for "multiple issues concerning patient care and professionalism," among other things. Dr. Sulaiman also stated Hoang had appealed his termination, but the appeal was denied. We have no other information regarding this appeal.

On October 31, 2019, Dr. Sulaiman signed an affidavit stating Hoang was terminated from the residency program "based on his lack of medical knowledge, patient care issues directly affecting patient safety, and his lack of professionalism." Dr. Beal and Leisa Oglesby[1] signed similar affidavits.

In addition to the documents just described, which Hoang himself provided to the Medical Board, it appears the Medical Board also requested and obtained the residency

---

[1] Oglesby is the designated institutional official of the Louisiana State University Health Sciences Center-Shreveport Graduate Medical Education Department.

4

program's file on Hoang (and we note that, as part of the application process, Hoang authorized the program "to release to the Medical Board of California . . . any information, files or records, including medical records[ and] educational records, . . . requested by the Board in connection with this application").  The Medical Board's file in this case thus includes documents provided by both Hoang and by the residency program.[2]

On November 21, 2019, the Medical Board denied Hoang's application due to his discipline by and termination from the residency program.  Hoang requested a hearing to contest the denial, and the Medical Board issued a "statement of issues."[3]  Under the heading "Jurisdiction," the statement of issues identified Business and Professions Code sections 475, 480, 2221, and 2234.  We will discuss these sections in more detail below.  The statement of issues briefly described Hoang's discipline and termination, and contained one cause for denial of the application titled "Unprofessional Conduct," which stated, in full:  "Applicant's application for a physician and surgeon's [license] is subject to denial under Business and Professions Code sections 2221, subdivision (a) (license may be denied for unprofessional conduct) and 2234 (general unprofessional conduct) for unprofessional conduct as demonstrated by Applicant's inadequacies and deficiencies in his internship program, as described above."

At the hearing, the Medical Board presented expert testimony from Dr. James Nuovo.  Dr. Nuovo has been licensed to practice medicine in California since 1992, and is board certified in family medicine.  He was responsible for residency programs at the University of California, Davis School of Medicine from 1992 through 2018.  Hoang

---

[2]    Many of the documents overlap (i.e., many of the documents Hoang provided were also provided by the residency program).

[3]    A "statement of issues" is the name of the document that is filed to initiate "[a] hearing to determine whether a . . . license . . . should be granted."  (Gov. Code, § 11504.)

5

does not challenge Dr. Nuovo's qualifications as an expert. Dr. Nuovo reviewed Hoang's application. He testified the application in and of itself raised concerns about Hoang's ability to safely practice medicine because it disclosed he had been terminated from his residency program, and it was "extremely unusual for a program to have to terminate a resident." Dr. Nuovo also reviewed the documents provided to the Medical Board by both Hoang and the residency program. Based on his review of the documents, Dr. Nuovo opined Hoang was not capable of practicing competently and safely. He found some of Hoang's errors in medical judgment were "shocking" and "dumbfound[ing]," and he testified "patients can die" from such errors. He acknowledged he did not interview Hoang, and he accepted all of the program's allegations as true, and the Medical Board thus acknowledged Dr. Nuovo's "review was based on hearsay and double hearsay."

Hoang testified on his own behalf. He denied the most serious allegations against him. He did not present his own expert. He submitted letters of recommendation from classmates, supervisors, and a nurse. He presented testimony from Dr. Stephen H. Greenberg, who was the director of the residency program from April 2013 to July 2017. Dr. Greenberg was involved in the process of selecting Hoang for the residency program, but his last day as director of the program was the same day that Hoang started. Dr. Greenberg thus did not supervise or oversee Hoang during his residency program and had no personal knowledge about his performance in the program.

Following the hearing, the Medical Board issued a decision denying Hoang's application based on its conclusion that Hoang "failed to demonstrate that he is safe to practice independently."

Hoang filed a petition for writ of mandate pursuant to Code of Civil Procedure section 1094.5 challenging the Medical Board's decision. The trial court denied the petition and entered judgment accordingly, and Hoang timely appealed.

6

**STANDARD OF REVIEW**

"In reviewing administrative proceedings under [Code of Civil Procedure] section 1094.5 that do not affect a fundamental right, such as an attempt to obtain a license to engage in a profession or business, the trial court reviews the whole administrative record to determine whether the findings are supported by substantial evidence and whether the agency committed any errors of law. [Citations.] On appeal in such a case, we stand in the same shoes as the trial court and apply the same standard of review." (*Donley v. Davi* (2009) 180 Cal.App.4th 447, 455-456.) "Under the substantial evidence test, the agency's findings are presumed to be supported by the administrative record and, in both the trial court and here on appeal, it is the petitioner/appellant's burden to show they are not. [Citations.] We ' "do not reweigh the evidence; we indulge all presumptions and resolve all conflicts in favor of the [agency's] decision. . . ." ' [Citation.] When more than one inference can be reasonably deducted from the facts, we cannot substitute our own deductions for that of the agency." (*Id*. at p. 456.) We decide issues of law de novo. (*Medical Board v. Superior Court* (2001) 88 Cal.App.4th 1001, 1008.)

**DISCUSSION**

We note at the outset that Hoang is representing himself on appeal,[4] and many of his arguments are difficult to understand. However, although "a party may choose to act as his or her own attorney," " '[s]uch a party is to be treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys.' " (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246-1247.)

---

**4** He was represented by counsel at the administrative hearing and in the trial court.

I

*Amendments to Business and Professions Code Section 480 do not Affect the Medical Board's Decision*

Hoang's first set of arguments are related, and deal with an amendment to Business and Professions Code section 480[5] that took effect during the pendency of the administrative proceedings in this case. He contends (1) the Medical Board's decision must be reversed because it is based on a version of section 480 that no longer exists, and (2) the amendment to section 480 impliedly repealed the Medical Board's authority to deny a license for unprofessional conduct. These arguments raise an issue of statutory construction, which we review de novo. (*Medical Board v. Superior Court, supra*, 88 Cal.App.4th at p. 1008.) For the reasons explained below, we reject both arguments and find the amendment to section 480 does not affect the outcome in the case.

*A.      Sections 475, 480, 2221, and 2234*

The Medical Board cited sections 475, 480, 2221, and 2234 in both the statement of issues and its decision as grounds for denying Hoang's application. We begin by briefly examining those four sections and where they fit into the Business and Professions Code as a whole.

As the name implies, the Business and Professions Code regulates businesses and professions. It establishes California's Department of Consumers Affairs (§ 100), which is comprised of numerous boards that license and regulate various trades and professions, including doctors, nurses, dentists, veterinarians, accountants, real estate appraisers, contractors, and barbers and cosmetologists (§ 101). The Medical Board is one such board, and it licenses and regulates physicians and surgeons. (§§ 101, subd. (b), 2000 et seq.)

---

[5]      Undesignated statutory references are to the Business and Professions Code.

Sections 475 and 480 are in division 1.5 of the Business and Professions Code, which deals with denial, suspension, and revocation of licenses. Division 1.5 "applies broadly" to all boards within the Department of Consumer Affairs and to the trades and professions those boards license and regulate. (*Sulla v. Board of Registered Nursing* (2012) 205 Cal.App.4th 1195, 1205; see also *Lone Star Security & Video, Inc. v. Bureau of Security & Investigative Services* (2009) 176 Cal.App.4th 1249, 1256.)

Section 475 provides, in relevant part: "(a) Notwithstanding any other provision of this code, the provisions of this division shall govern the denial of licenses on the grounds of: [¶] . . . [¶] (4) Commission of any act which, if done by a licentiate of the business or profession in question, would be grounds for suspension or revocation of license."

Prior to July 1, 2020, section 480 provided in relevant part: "(a) Notwithstanding any other provision of this code, a board may deny a license regulated by this code on the grounds that the applicant has one of the following: [¶] . . . [¶] (3) (A) Done any act that if done by a licentiate of the business or profession in question, would be grounds for suspension or revocation of license." We will refer to this as the prior version of section 480. By its terms, it became "inoperative on July 1, 2020, and, as of January 1, 2021, is repealed." (Former § 480, subd. (e).)

Section 480 currently states (and has stated since July 1, 2020), in relevant part: "(a) Notwithstanding any other provision of this code, a board may deny a license regulated by this code on the grounds that the applicant has been convicted of a crime or has been subject to formal discipline only if" certain conditions are met. (§ 480, subd. (a).) As to formal discipline, the board may only deny a license on that ground if the "applicant has been subjected to formal discipline by a licensing board in or outside California within the preceding seven years from the date of application based on professional misconduct that would have been cause for discipline before the board for which the present application is made and that is substantially related to the

9

qualifications, functions, or duties of the business or profession for which the present application is made." (§ 480, subd. (a)(2).)[6] Section 480 no longer authorizes a board to deny a license based on an act that would be grounds for suspension or revocation of a license.

In addition to division 1.5, which applies to all boards within the Department of Consumer Affairs, the Business and Professions Code contains other divisions and sections that apply exclusively to particular boards and particular trades and professions. As relevant here, the Medical Practice Act, which is in chapter 5 of division 2 of the Business and Professions Code, regulates the Medical Board and the practice of medicine. (§ 2000 et seq.) Sections 2221 and 2234 are part of the Medical Practice Act and apply only to the Medical Board.

Section 2221 provides, in relevant part, the Medical Board may deny a license "to an applicant guilty of unprofessional conduct or of any cause that would subject a licensee to revocation or suspension of their license." (§ 2221, subd. (a).) And section 2234 provides the Medical Board shall take action against a licensee who is charged with unprofessional conduct, and it defines unprofessional conduct as including certain enumerated acts like gross negligence, repeated negligent acts, and incompetence. (§ 2234.) Case law teaches that unprofessional conduct is not limited to the acts enumerated in section 2234 and includes any "conduct which indicates an unfitness to practice medicine."[7] (*Shea v. Board of Medical Examiners* (1978) 81 Cal.App.3d 564, 575; see *id*. at p. 575, fn. 5.)

---

[6] It appears undisputed for purposes of this appeal that Hoang has never been convicted of a crime or subject to formal discipline by another licensing board.

[7] Hoang does not seriously contend the conduct underlying his discipline and termination does not indicate an unfitness to practice medicine. Instead, he contends the Medical Board failed to prove the conduct actually occurred.

We note that, pursuant to these four sections of the Business and Professions Code, unprofessional conduct is grounds for denial of a license in two ways. The first and more direct way is pursuant to section 2221, which provides the Medical Board may deny a license to an applicant guilty of unprofessional conduct—period. The second way, which is more circuitous but which ends up at the same place, is pursuant to the prior version of section 480 and to section 2221, which both provide the Medical Board may deny a license based on an act or cause that would be grounds for suspension or revocation, and section 2234, which provides the Medical Board may suspend or revoke a license based on unprofessional conduct.

B.     *Hoang's arguments regarding section 480*

Hoang argues the Medical Board's decision must be reversed because it is based on a version of section 480 that no longer exists. We disagree.

The statement of issues in this case was issued in March 2020, and the Medical Board thus cited the prior version of section 480 because that is the version that was in effect at the time. Again, the prior version authorized a board to deny a license on the ground the applicant had done an act that would be grounds for suspension or revocation of a license. By the time the administrative hearing was held (in April 2021) and the challenged decision was issued (in December 2021), section 480 had been amended to provide a board may deny a license based on conviction of a crime or formal discipline by a licensing board if certain conditions were met, and it no longer authorizes a board to deny a license based on an act that would be grounds for suspension or revocation of a license. The Medical Board nonetheless cited the prior version of section 480 in its decision as a ground for denying Hoang's application.

Hoang argues that, because the Medical Board cited the prior version of section 480, which had been repealed by the time it issued its decision, it acted in excess of its jurisdiction in denying his application. We disagree. We *might* agree if the Medical Board had cited *only* the prior version of section 480 as a basis for denying Hoang's

11

application, because that version no longer exists. (See, e.g., *Governing Board v. Mann* (1977) 18 Cal.3d 819, 826-828 [where the school district disciplined a teacher based on conviction for possession of marijuana, and where law enacted during pendency of appeal prohibited public agencies from sanctioning an individual based on conviction for possession of marijuana, the district could no longer discipline the teacher based on conviction].) But the Medical Board also cited section 2221 as a basis for denying Hoang's application. That section was in effect at all relevant times, and it authorizes the Medical Board to deny a license based on unprofessional conduct. Moreover, it is clear from both the statement of issues and the challenged decision that the Medical Board denied Hoang a license because of unprofessional conduct. The Medical Board's citation to the prior version of section 480 thus does not affect the validity of its decision.

Hoang also argues that when the Legislature amended section 480, it limited the Medical Board's authority to deny a license to the two grounds specified therein (i.e., conviction of a crime or formal discipline by another licensing board), and thus impliedly repealed the Medical Board's authority to deny a license for unprofessional conduct pursuant to section 2221. Again, we disagree.

The Legislature "has opted to create a two-track system to make [licensure] available under *both* section 4[8]0 *and* other [Business and Professions Code] sections addressing individual trades" and professions. (*Lone Star Security & Video, Inc. v. Bureau of Security & Investigative Services, supra*, 176 Cal.App.4th at pp. 1256-1257, italics added.) Thus, although section 480 specifies grounds for denying an application for licensure that apply to all boards within the Department of Consumer Affairs, it is not exclusive, and other provisions of the Business and Professions Code remain applicable to specific boards. As relevant here, section 2221, which is part of the Medical Practice Act, provides the Medical Board may deny an application for unprofessional conduct, and that is what the Medical Board did here.

12

We reject Hoang's argument that the Legislature impliedly repealed section 2221 when it amended section 480. When interpreting two statutes that " 'touch upon a common subject,' we must construe them 'in reference to each other, so as to "harmonize the two in such a way that no part of either becomes surplusage." ' " (*Garcia v. McCutchen* (1997) 16 Cal.4th 469, 476.) We presume the Legislature intended " 'every word, phrase and provision' " in both statutes " 'to have meaning and to perform a useful function.' " (*Ibid*.) Finally, and critically, we do not lightly imply that the Legislature intended to repeal a statute. Instead, " '[A]ll presumptions are against a repeal by implication. [Citations.]' [Citation.] Absent an express declaration of legislative intent, we will find an implied repeal 'only when there is no rational basis for harmonizing the two potentially conflicting statutes [citation], and the statutes are "irreconcilable, clearly repugnant, and so inconsistent that the two cannot have concurrent operation." ' " (*Id*. at pp. 476-477.)

When it amended section 480, the Legislature did not mention section 2221, much less expressly repeal it,[8] and we find the two statutes do not conflict. Instead, they provide separate and independent grounds for the Medical Board to deny a license. Section 480 authorizes any board within the Department of Consumer Affairs to deny a license based on commission of a crime or discipline by another licensing board, and section 2221 authorizes the Medical Board to deny a license based on unprofessional conduct. The statutes are not irreconcilable or inconsistent and both can operate concurrently.[9]

---

[8]    Hoang notes the Legislature expressly repealed the prior version of section 480, which is true. But the Legislature did not also expressly repeal section 2221, and for the reasons explained herein, we find the Legislature did not impliedly repeal that section either.

[9]    This fact also distinguishes this case from *Pieri v. Fox* (1979) 96 Cal.App.3d 802, a case cited by Hoang, albeit with almost no discussion of how it applies here. In *Pieri*,

Our conclusion that the amendment to section 480 did not impliedly repeal section 2221 is buttressed by the fact that the Medical Board (or its predecessor) has been authorized to deny a license based on unprofessional conduct for over a century. (See, e.g., Stats 1907, ch. 212, § 11, p. 255 [board of medical examiners "must refuse a certificate to any applicant guilty of unprofessional conduct"]; Stats 1945, ch. 896, § 1, p. 1660 [board "shall refuse a certificate to any applicant guilty of unprofessional conduct"]; Stats 1976, ch. 1185, § 46, p. 5302 [division of licensing "shall refuse a certificate to any applicant guilty of unprofessional conduct"]; Stats 1983, ch. 95, § 5, p. 200 [division "may deny a physician's and surgeon's certificate to an applicant guilty of unprofessional conduct or of any cause that would subject a licensee to revocation or suspension of license"].) Had the Legislature intended to repeal such long-standing authority, we would expect a very clear statement of such intent, but there is none.

II

*The Medical Board Properly Relied on Section 2221*

Hoang also makes two brief arguments about section 2221. First, he notes the Medical Board's decision "did not even reference section 2221(a) as providing authority for denial" of his application. Hoang is incorrect. The decision states cause for denial exists "pursuant to Business and Professions Code sections 475, subdivision (a)(4), 480, subdivision (a)(3)(A), *2221* and 2234 (unprofessional conduct) and 2234, subdivision (d) (incompetence)." (Bolding and italics added.) Although the decision does not specifically cite subdivision (a) of section 2221, it clearly identifies unprofessional conduct as the cause of denial, and it is subdivision (a) that provides the Medical Board "may deny a physician's and surgeon's certificate to an applicant guilty of unprofessional conduct."

---

the two statutes at issue—sections 480 and 10177—actually conflicted and could not both operate at the same time. Here, there is no such conflict.

14

Second, Hoang notes section 2221 uses the term "guilty"—i.e., "The board may deny a physician's and surgeon's certificate to an applicant *guilty* of unprofessional conduct" (§ 2221, subd. (a), italics added)—and he appears to argue that by using this term, the Legislature intended to limit the phrase "unprofessional conduct" to criminal acts. He cites no authority to support this argument, and we are aware of none. Moreover, we note that section 2234 defines the phrase "unprofessional conduct" as including "[i]ncompetence," which is not a crime. (§ 2234, subd. (d).) We also note that case law has long held unprofessional conduct includes any conduct "which indicates an unfitness to practice medicine" (*Shea v. Board of Medical Examiners, supra*, 81 Cal.App.3d at p. 575), and unfitness to practice medicine is also not a crime. We thus find the term "unprofessional conduct" is not limited to criminal acts.

III

*The Admission and Use of Hearsay Was Proper*

Hoang's final series of arguments deals with the admission and use of hearsay at the administrative hearing. By hearsay, he refers to the documents about him from the residency program's file. Although these arguments are underdeveloped and sometimes difficult to understand, his point appears to be that the Medical Board's decision denying him a license must be reversed because (1) it is based on a finding that he is not safe to practice medicine, and (2) that finding is not supported by substantial evidence because it is based solely on hearsay. As we explain below, we disagree.

We note at the outset that the "rules of evidence do not apply to administrative hearings," and that includes the rules governing the admission of hearsay. (*Big Boy Liquors, Ltd. v. Alcoholic Beverage Control Appeals Bd.* (1969) 71 Cal.2d 1226, 1230.) The admission of evidence is governed by Government Code section 11513, which provides, "The hearing need not be conducted according to technical rules relating to evidence and witnesses, except as hereinafter provided. Any relevant evidence shall be admitted if it is the sort of evidence on which responsible persons are accustomed to rely

15

in the conduct of serious affairs, regardless of the existence of any common law or statutory rule which might make improper the admission of the evidence over objection in civil actions." (Gov. Code, § 11513, subd. (c).) "Thus even 'hearsay evidence is admissible in an administrative hearing if (1) it is relevant, and (2) it is of the character or quality on which "responsible persons are accustomed to rely in the conduct of serious affairs." ' " (*McCoy v. Board of Retirement* (1986) 183 Cal.App.3d 1044, 1053-1054, italics omitted; see also *Gregory v. State Bd. of Control* (1999) 73 Cal.App.4th 584, 596 [same].)

We easily conclude a residency program's file regarding its discipline and termination of a resident is both relevant and the sort of evidence that a responsible medical licensing board would rely on in deciding whether to grant that person a license to practice medicine. Our conclusion is buttressed by Dr. Nuovo's uncontradicted testimony that he reviewed the residency program's file on Hoang, that it contained the types of materials he would expect to see in a resident's file, and that a program director (or any physician) would reasonably rely on such materials when evaluating a resident's competency and qualifications. As Dr. Nuovo also explained (again without contradiction), the purpose of a residency program "is to transform medical school graduates into physicians capable of independent practice by ensuring that a resident can translate medical knowledge into safe clinical practice." In recognition of the importance of residency programs to ensuring the safe practice of medicine, the Legislature has provided that, in order to obtain a physician's and surgeon's license, the applicant must have received credit for at least 12 months of postgraduate training. (§ 2096.) It has also provided that licenses must be renewed every two years (§ 2423), and that before a license may be renewed for the first time, the physician must have received credit for at least 36 months of postgraduate training (§ 2097). The Legislature has also declared, "Protection of the public shall be the highest priority for the Medical Board of California in exercising its licensing, regulatory, and disciplinary functions. Whenever the

16

protection of the public is inconsistent with other interests sought to be promoted, the protection of the public shall be paramount." (§ 2001.1.) Given how important postgraduate training is to both (1) protecting the public by ensuring physicians are safe to practice, and (2) obtaining and maintaining a license, we do not see how a responsible licensing board could fail to consider a residency program's file on an applicant, especially an applicant who was terminated from the program for reasons demonstrating an unfitness to practice medicine. We thus find no error in admitting the residency program's file on Hoang into evidence even though the file contains hearsay.

That the files were properly admitted does not end the analysis, however, because Government Code section 11513 also provides, "Hearsay evidence may be used for the purpose of supplementing or explaining other evidence but over timely objection [and we note there was a timely objection in this case] shall not be sufficient in itself to support a finding unless it would be admissible over objection in civil actions." (Gov. Code, § 11513, subd. (d).) Thus, hearsay "is perfectly acceptable evidence to rely upon in an administrative proceeding to supplement or explain other admissible evidence," but it "is insufficient to support a point itself." (*Malaga County Water Dist. v. State Water Resources Control Bd.* (2020) 58 Cal.App.5th 447, 480.) We agree with the Medical Board's argument that, although the residency program files contain hearsay, that hearsay could properly be used to supplement or explain the admissions Hoang made as part of the application process and at the hearing. Hoang is a party to this proceeding, and Evidence Code section 1220 provides that the admission of a party "is not made inadmissible by the hearsay rule." Hoang's application was admitted into evidence without objection, and as part of that application, he admitted he was disciplined and terminated by the residency program. He also provided the Medical Board with copies of the probation and termination notices, which, on their face, show he was disciplined and terminated for reasons that demonstrate an unfitness to practice medicine. Although we acknowledge that Hoang insists the reasons for his discipline and termination are false

17

and/or unfounded, he nonetheless admitted that those reasons are why he was disciplined and terminated. Hoang's admissions would thus be admissible over objection in a civil action pursuant to Evidence Code section 1220, and the program files were admissible to supplement and explain those admissions.

IV

*Sufficient Evidence Supports the Medical Board's Decision*

Although the program files were admissible, Hoang is correct when he argues that hearsay standing alone is not sufficient in itself to support a finding.[10] Hoang then argues the Medical Board failed to present any nonhearsay evidence to support its finding that he is not safe to practice medicine. This argument demonstrates a misunderstanding of both the burden of proof and the Medical Board's ultimate conclusion in this case.

"[T]here is a clear distinction between proceedings involving the *revocation* of an existing license and proceedings involving the denial of an *application* for a license." (*Martin v. Alcoholic Bev. etc. Appeals Bd.* (1959) 52 Cal.2d 259, 264, italics added.) Courts "often have recognized that an individual, having obtained the license required to engage in a particular profession or vocation, has a 'fundamental vested right' to continue in that activity." (*Hughes v. Board of Architectural Examiners* (1998) 17 Cal.4th 763, 788-789.) "A licensee, having obtained such a fundamental vested right, is entitled to certain procedural protections greater than those accorded an applicant." (*Id*. at p. 789.) Thus, " 'When an administrative agency initiates an action to suspend or revoke a license, the burden of proving the facts necessary to support the action rests with the agency making the allegation. Until the agency has met its burden of going forward with the evidence necessary to sustain a finding, the licensee has no duty to rebut the allegations

---

**10** Unless, of course, it would be admissible over objection in a civil action, but, as Hoang notes, the Medical Board has never claimed everything in the program's files would be admissible over objection in a civil action.

18

or otherwise respond.' " (*Kruger v. Department of Motor Vehicles* (1993) 13 Cal.App.4th 541, 547.)

This case, however, is not a license revocation case. It is a license application case. And in a license application case, the burden of proof is on the applicant to show he or she is qualified for licensure. (*Martin v. Alcoholic Bev. etc. Appeals Bd., supra*, 52 Cal.2d at p. 265 ["the burden of proof may properly be placed upon the applicant in application proceedings"]; *Bode v. Los Angeles Metropolitan Medical Center* (2009) 174 Cal.App.4th 1224, 1233 [applicant for hospital staff privileges has burden of proof of qualifications].) It was thus not the Medical Board's burden to prove Hoang was not safe to practice medicine; it was Hoang's burden to prove he was safe.[11] (See *Pick v. Santa Ana-Tustin Community Hospital* (1982) 130 Cal.App.3d 970, 984.)

Moreover, Hoang's burden of proof was necessarily affected by what he disclosed to the Medical Board as part of his application. As described above, he admitted in his application he was disciplined and terminated, and he submitted numerous documents to the Medical Board that show, on their face, he was disciplined and terminated for reasons having to do with his unfitness to practice medicine. Hoang cites no authority (and we are aware of none) that holds a licensing board may not rely on documents submitted to it *by an applicant* in deciding whether to issue a license. Indeed, it is difficult to see how a licensing board could function properly if it could not rely on such documents. In order

---

[11]    Hoang's citation to discipline cases like *Ashford v. Culver City Unified School Dist.* (2005) 130 Cal.App.4th 344, disapproved on other grounds in *Voices of the Wetlands v. State Water Resources Control Bd.* (2011) 52 Cal.4th 499, 535, and *Martin v. State Personnel Bd.* (1972) 26 Cal.App.3d 573 is thus not apt because the burden in those cases is flipped. In *Ashford*, for example, an employee was able to successfully challenge his termination even though "[h]e did not testify at the hearing but instead relied on his right to require [the employer] to present admissible evidence in support of the charges against him." (*Ashford*, at p. 347.) Here, it is the Medical Board that could rely on its right to require Hoang to present admissible evidence sufficient to demonstrate he is safe to practice.

19

to meet his burden of proving he was safe to practice medicine, Hoang had to produce sufficient evidence to overcome the concerns about his fitness to practice medicine that he himself disclosed. We thus agree with the Medical Board's related argument that it was not its burden to prove Hoang's discipline and termination were justified; it was effectively Hoang's burden to prove they were not.

The Medical Board found Hoang did not meet his burden of proof, and he gives us no reason to reject this finding. Based on his argument headings, he appears to argue the Medical Board's finding that he is not safe to practice is not supported by substantial evidence because it is based solely on hearsay. That argument takes too narrow a view of what the Medical Board actually found. It is true that the Medical Board noted Dr. Nuovo's opinion that Hoang was not safe to practice, and also noted Dr. Nuovo's opinion was based largely on hearsay. However, its ultimate finding was that Hoang failed to meet his burden of proof to establish he is safe to practice. As the Medical Board correctly recognized, "The burden of proof is on the Applicant to establish that he meets the requirements for licensure and is safe to practice." And it found, "Applicant failed to demonstrate that he is safe to practice independently." Hoang never mentions this finding, much less convinces us it is based solely on hearsay or is otherwise not supported by substantial evidence. (See *Cameron v. Sacramento County Employees' Retirement System* (2016) 4 Cal.App.5th 1266, 1278 ["factual findings not contested must be accepted as true"]; *Von Durjais v. Board of Trustees* (1978) 83 Cal.App.3d 681, 687 [any finding not specifically attacked is to be accepted as true].)

As the Medical Board notes, Hoang's only evidence that he is safe to practice is his own testimony,[12] and much of that testimony is difficult to understand and not

---

[12] As noted above, the only witness Hoang called—Dr. Greenberg—did not supervise him during his residency program and thus has no personal knowledge of why he was disciplined or terminated.

20

convincing. He testified about much (but not all) of the underlying conduct for which he was disciplined and terminated and gave his version of events, the gist of which is that he did not do what he was charged with doing, or others were "confused," or the charges were based on "a misunderstanding" or "a mix up," or he "did not do anything inappropriate." The Medical Board was not required to credit Hoang's self-serving version of events. "The trier of the fact is the exclusive judge of the credibility of witnesses and may reject in toto even uncontradicted evidence by taking into consideration the bias and motive of the person testifying." (*Akopiantz v. Board of Medical Examiners* (1961) 190 Cal.App.2d 81, 90; see also *In re Marriage of Hofer* (2012) 208 Cal.App.4th 454, 460 ["The trier of fact may reject even uncontradicted evidence as not credible"].) "In reviewing factual determinations for substantial evidence, a reviewing court should 'not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts.' [Citation.] The determinations should 'be upheld if . . . supported by substantial evidence, even though substantial evidence to the contrary also exists and the [fact finder] might have reached a different result had it believed other evidence.' [Citations.] Uncontradicted testimony rejected by the [fact finder] ' "cannot be credited on appeal unless, in view of the whole record, it is clear, positive, and of such a nature that it cannot rationally be disbelieved." ' " (*In re Caden C.* (2021) 11 Cal.5th 614, 640.) Hoang fails to convince us his self-serving testimony "cannot rationally be disbelieved," and he thus gives us no reason to reject the Medical Board's finding that he failed to meet his burden of proof.

Hoang appears to believe that all he had to do to meet his burden of proof was to state the residency program's reasons for disciplining and terminating him were false or unfounded, and once he did that, the burden then shifted to the Medical Board to prove the residency program's reasons were founded. He cites no authority for this proposition, and we are aware of none. Again, it was his burden to prove he was safe, and the Medical Board found he failed to meet his burden.

Hoang argues one document in the record definitively disproves the residency program's reasons for disciplining and terminating him and establishes he is fit to practice. The document is a Medical Board form titled "Certificate of Completion of ACGME/RCPSC Postgraduate Training," and it is to be completed by every postgraduate training program the applicant attends. The form contains the following, preprinted certification: "The program director signing this form is formally certifying and documenting under penalty of perjury that the applicant received instruction appropriate for the particular postgraduate level and that he/she satisfactorily completed periods of training in accordance with the accepted standards and the criteria defined as equating to satisfactory performance. *The program director is attesting to the fact that the applicant has acquired the skill and qualifications necessary to safely assume the unrestricted practice of medicine in this state.*" (Italics added.) Dr. Sulaiman signed the form on September 6, 2019. Hoang argues the italicized language conclusively demonstrates he is safe to practice medicine. We disagree, because Hoang completely ignores that portion of the form that asks the program director about "unusual circumstances." In this portion of the form, Dr. Sulaiman answered "yes" to the following questions: (1) "Did the applicant receive partial or no credit during his/her postgraduate training?" (2) "Was the applicant ever terminated, dismissed or expelled?" (3) "Was the applicant ever placed on probation?" (4) "Was the applicant ever disciplined or placed under investigation?" And (5) "Were any limitations or special requirements placed upon the applicant for clinical performance, professionalism, medical knowledge, discipline, or for any other reason?" Given these answers, and contrary to Hoang's argument, this form did not conclusively establish he was fit to practice medicine and entitled to a license, particularly in light of the numerous documents Hoang provided to the Medical Board that demonstrate his unfitness.

Hoang also argues issuance of a license should have been "automatic" because he met all three requirements for licensure in California—he graduated from medical school,

22

he completed 12 months of postgraduate training, and he passed all steps of the United States Medical Licensing Examination.  (See §§ 2082 [application for licensure shall include diploma and official transcript from approved medical school; proof of passage of required written examinations; and satisfactory completion of postgraduate training required by § 2096], 2096 [before license may be issued applicant must receive at least 12 months of board-approved postgraduate training].)  We disagree.  When an applicant informs the Medical Board he was disciplined and terminated by a residency program for reasons demonstrating he is unfit to safely practice medicine, licensure is not automatic, and the burden is on the applicant to prove he is fit.

The burden of proof in this case also answers Hoang's complaint that the Medical Board failed to call any of the individuals who witnessed or had personal knowledge of the conduct for which he was disciplined and terminated, which deprived him of the opportunity to question them.  He fails to convince us the Medical Board was required to call these individuals.  Again, it was Hoang's burden to prove he was safe to practice medicine, not the Medical Board's burden to prove he was not.  Hoang could have called these individuals himself, deposed them, or obtained affidavits from them and introduced the affidavits into evidence.  (See Gov. Code, §§ 11513, subd. (b) [each party to administrative hearing "shall have [the] right . . . to call and examine witnesses"], 11511 ["On verified petition of any party, an administrative law judge or . . . an agency may order that the testimony of any material witness residing within or without the state be taken by deposition . . . .  Where the witness resides outside the state and where the administrative law judge or agency has ordered the taking of the testimony by deposition, the agency shall obtain an order of court to that effect by filing a petition therefor in the superior court in Sacramento County"], 11514, subd. (a) [outlining procedure for introducing affidavits at administrative hearing].)  He did none of these things.

For all the reasons stated above, we find the Medical Board's decision is supported by substantial evidence.

## DISPOSITION

The judgment is affirmed and, as the prevailing party, the Medical Board shall recover its costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)


_____/s/_____
EARL, P. J.

We concur:


_____/s/_____
HULL, J.


_____/s/_____
WISEMAN, J.*

---

\*      Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.